No. 1-22-1165          2023 IL App (1st) 221165-U          Fourth Division
Filed November 16, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST DISTRICT

| | |
|---|---|
| GOMBERG SHARFMAN P.C., | Appeal from the |
|     Plaintiff and Counterdefendant-Appellee, | Circuit Court of Cook County |
| *v.* | No. 19 L 2297 |
| THOMAS KUZNAR, | The Honorable Jerry A. Esrig, |
|     Defendant and Counterplaintiff-Appellant. | Judge, presiding. |

JUSTICE OCASIO III delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

### ORDER

¶ 1    *Held:*  (1) The record was not adequate to review the trial court's alleged error in granting Gomberg Sharfman P.C. leave to file a belated reply to affirmative defenses and answer to counterclaims. (2) There was no genuine issue of material fact as to the existence of a conflict of interest that would impair Gomberg Sharfman's representation of defendant Thomas Kuznar. (3) Gomberg Sharfman failed to carry its initial burden of production when it moved for summary judgment on counterclaim related to Westlaw costs. (4) The trial court's calculation of damages was against the manifest weight of the evidence to the extent its finding as to fees billed by Gomberg Sharfman exceeded the amounts stated in the firm's invoices.

¶ 2    Plaintiff-counterdefendant Gomberg Sharfman P.C. (Gomberg Sharfman) sued defendant-counterplaintiff Thomas Kuznar over unpaid legal fees.[1] Mr. Kuznar, acting *pro se*, responded by

---

[1] According to the Secretary of State's Office, Gomberg Sharfman P.C. was voluntarily dissolved on September 6, 2022. Under the Business Corporation Act of 1983, that dissolution does not abate or suspend this appeal, which Gomberg Sharfman may continue to defend under its corporate name. See 805 ILCS 5/12.30(c)(5), 12.80 (West 2022).

raising a variety of affirmative defenses and counterclaims, including claims that Gomberg Sharfman represented him despite having an undisclosed conflict of interest and that it breached its fiduciary duty by engaging in fraudulent billing practices. Gomberg Sharfman moved for summary judgment on its breach-of-contract claims and on Mr. Kuznar's affirmative defenses and counterclaims. The trial court denied the motion as to Gomberg Sharfman's complaint, but it entered summary judgment against Mr. Kuznar on his affirmative defenses and counterclaims. After a bench trial, it entered judgment in favor of Gomberg Sharfman on its breach-of-contract claims for unpaid legal fees in the amount of $28,026.60.

¶ 3        On appeal, Mr. Kuznar argues that the trial court erred by granting Gomberg Sharfman leave to file a belated reply to his affirmative defenses and answer to his counterclaims, granting summary judgment against him on his conflict-of-interest and fraudulent-billing counterclaims, and in calculating the unpaid attorney fees he owed to Gomberg Sharfman. We find no error in granting Gomberg Sharfman leave to file its belated reply and answer, and we find that the trial court properly entered summary judgment against Mr. Kuznar on the conflict-of-interest counterclaim. We agree, however, that summary judgment should not have been entered on Mr. Kuznar's fraudulent-billing counterclaim and that the trial court's damages calculation was not supported by the evidence. Accordingly, we modify the damages award, and we reverse the entry of summary judgment on the fraudulent-billing counterclaim and remand for further proceedings on that claim. We otherwise affirm the judgment of the trial court.

¶ 4                                BACKGROUND

¶ 5        In 2015, after nearly two decades of litigation, Mr. Kuznar, as the representative of his mother Emilia's estate, obtained a judgment against Anna Kuznar, whom his father (and Emilia's husband) Mitchell had purportedly married in the United States after emigrating from Poland, for the proceeds of a pension fund that Anna had collected after Mitchell's death. He retained Lavelle Law (Lavelle) to collect the judgment, but Lavelle withdrew in early 2016 and then filed suit against Mr. Kuznar for unpaid fees.

¶ 6     In September 2016, while Lavelle's suit against him was still pending, Mr. Kuznar retained Gomberg Sharfman to enforce his judgment against Anna by levying on real estate she owned in Mount Prospect (the levy matter).[2] In May 2017, the firm also began representing him in a foreclosure action involving the same property (the foreclosure matter). Per the terms of the retainer agreement signed by the parties, Mr. Kuznar agreed to pay fees at the hourly rate billed by the firm's attorneys. He also agreed to reimburse the firm for out-of-pocket costs, referred to in the agreement as disbursements, including the firm's "actual third-party costs" for computerized legal-research services. Both matters were handled almost entirely by Raymond Ostler, who was of counsel to the firm, and Jennifer Hughes, an associate.

¶ 7     Over the next two years, Gomberg Sharfman sent Mr. Kuznar monthly invoices detailing the work its attorneys had done and the reimbursable costs it had incurred, including charges for the costs of performing legal research on Westlaw. At some point, though, Mr. Kuznar fell behind on paying his monthly invoices. The parties initially worked out a payment plan, but Mr. Kuznar stopped making payments altogether in January 2018. After the levy matter concluded in May 2018 with the approval of the levy sale, the parties were unable to come to a mutually acceptable arrangement for Mr. Kuznar to make payments going forward. In August 2018, Gomberg Sharfman withdrew from representing Mr. Kuznar in the ongoing foreclosure case and demanded that he pay all outstanding fees and costs it had charged him in both matters.

¶ 8     When payment was not forthcoming, in March 2019, Gomberg Sharfman filed a four-count complaint against Mr. Kuznar over the unpaid bills. The complaint alleged that, in the levy matter, the firm had billed Mr. Kuznar for $15,417.35 in fees and disbursements and that he had made payments totaling $4827.20, making it entitled to judgment for unpaid balance of $10,590.15. The complaint further alleged that, in the foreclosure matter, the firm had billed Mr. Kuznar for

---

[2]  At the time Mr. Kuznar retained Gomberg Sharfman, it was known as Gomberg, Sharfman, Gold & Ostler, P.C., but the firm had already adopted the name Gomberg Sharfman P.C. by the time it sent its first invoice to Mr. Kuznar in December 2016.

$33,620.96 in fees and disbursements, that he had made payments totaling $3910.75, and that the firm had "credited" him $3397.55 for Westlaw charges, making it entitled to judgment for the unpaid balance of $26,312.66.[3] Counts I and II sought damages for breach of contract in connection with the levy matter and the foreclosure matter, respectively. Counts III and IV, which were pleaded in the alternative, sought relief under theories of *quantum meruit* and account stated, respectively. The complaint was verified "upon information and belief" by a Gomberg Sharfman partner, Kimberly A. Padjen.

¶ 9      Mr. Kuznar filed his answer on November 18, 2019. He denied the complaint's allegations that he had been sent invoices totaling $15,417.35 in the levy matter and $33,620.96 in the foreclosure matter. He admitted that he made an initial payment of $2500 in the levy matter. Otherwise, he denied making payments totaling $4827.20 (including the initial payment) in the levy matter and $3910.75 in the foreclosure matter. He denied that Gomberg Sharfman had credited him $3397.55 for Westlaw costs. And he denied that Gomberg Sharfman was entitled to judgment against him in the amounts stated in the complaint.

¶ 10     The answer raised the following seven affirmative defenses: (1) the fees and expenses claimed by Gomberg Sharfman were unreasonable under the circumstances; (2) a claim for account stated does not apply to legal fees; (3) Gomberg Sharfman violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2016)) by using unfair and deceptive practices, including concealing and denying a conflict of interest, violating written agreements, violating oral agreements, preparing or filing wasteful and counterproductive pleadings, refusing to provide filings and documents, and engaging in courtroom misconduct; (4) Gomberg Sharfman had unclean hands by virtue of presenting fraudulent and exaggerated bills; (5) Gomberg Sharfman's claims were barred by equitable estoppel and promissory estoppel in that

---

[3]   In an apparent typographical error, the prayer for relief for the breach-of-contract claim related to the foreclosure matter stated that it was seeking judgment "in the amount of $31,676.12 plus interest and costs."

the "facts as set forth by [Gomberg Sharfman] were misrepresented and concealed," its billing practices showed that it acted with fraudulent intent, and there was "evident" injury to Mr. Kuznar; (6) the fees charged by Gomberg Sharfman grossly exceeded the estimate that had been provided and were therefore not recoverable; and (7) Gomberg Sharfman failed to timely file briefs, leading to adverse results.

¶ 11     Mr. Kuznar's answer also raised two counterclaims, which he designated as "cause[s] of action" for "conflict of interest" and "breach of fiduciary duties and unfair business practices."

¶ 12     In the conflict-of-interest claim, Mr. Kuznar alleged that Gomberg Sharfman "owed a duty of care *** to represent him *** in accordance with relevant legal standards of care within the practice of law." He alleged that Gomberg Sharfman breached those duties by failing to disclose and then affirmatively denying that it had a conflict of interest arising from its close professional relationship with Lavelle, which was suing Mr. Kuznar for unpaid fees at the time he retained Gomberg Sharfman. He further alleged that the conflict ultimately led to Gomberg Sharfman "ambush[ing]" him with financial demands, concealing and then withholding evidence obtained in discovery, and ultimately making "a hasty withdrawal" from the foreclosure matter. He sought $11,237.95 in damages in connection with this claim: $8737.95 for payments he had made to Gomberg Sharfman and $2500 for the retainer he paid to another firm to take over the foreclosure case.

¶ 13     The breach-of-fiduciary-duty claim alleged that Gomberg Sharfman had breached its fiduciary duty to Mr. Kuznar in six distinct ways and, in doing so, had acted oppressively, fraudulently, or maliciously. As relevant to this appeal, Mr. Kuznar alleged that Gomberg Sharfman breached its fiduciary duty by fraudulently inflating its actual costs when it billed him $3397.55 for "Westlaw Research" costs incurred on November 1, 2017, for research performed during the previous month. He did not allege that he had submitted payment for that charge and, unlike the five other sets of allegations Mr. Kuznar pleaded under his breach-of-fiduciary-duty claim, he did not seek compensatory damages in connection with the allegedly fraudulent Westlaw charges.

Instead, he only asked for $6000 in punitive damages on the theory that Gomberg Sharfman had intentionally violated the federal mail-fraud statute by sending the invoice containing the fraudulent charge through the mail. See 18 U.S.C. § 1341 (West 2018). In addition, Mr. Kuznar alleged that Gomberg Sharfman had also breached its fiduciary duty by: (1) overbilling him by exaggerating its billing entries, spending too much time on various tasks, double-billing certain work, and sending bills to him for the levy matter that were triple the original estimate it had provided; (2) violating previous oral and written arrangements it had made with him for paying his bills in set installments by demanding the immediate payment of all outstanding amounts; (3) refusing to turn over materials that had been obtained in discovery after withdrawing in the foreclosure matter; (4) failing to file a reply brief in connection with its motion to dismiss the complaint in the foreclosure matter; and (5) engaging in unprofessional and verbally abusive conduct inside and outside of the courtroom before, during, and after a hearing on a petition filed by Mr. Kuznar to require Gomberg Sharfman to turn over the materials in its possession after it withdrew in the foreclosure matter.

¶ 14     After Mr. Kuznar filed his answer, the trial court extended the time for Gomberg Sharfman to file a response to his affirmative defenses and counterclaims to December 30, 2019. On that date, Gomberg Sharfman filed a combined motion to dismiss Mr. Kuznar's affirmative defenses and his counterclaims. At the next court date, on January 15, 2020, the court struck the motion to dismiss but granted Gomberg Sharfman until January 29 to file another "responsive pleading" and specified that "any motion must provide [the] pleading being attacked." At the next court date, which was on February 26, the court entered an order giving Gomberg Sharfman until March 11 to file what the order termed a "responsive pleading (motion for summary judgment)." The record does not indicate that Mr. Kuznar objected to these extensions.

¶ 15     On March 11, 2020, Gomberg Sharfman filed a motion for summary judgment on its breach-of-contract claims and on Mr. Kuznar's affirmative defenses and counterclaims. As a general matter, it asserted that its original complaint and an affidavit from Jennifer Hughes, the

associate who was assigned to Mr. Kuznar's matters, satisfied its initial burden of production as to the breach-of-contract claims, the affirmative defenses, and the counterclaims.

¶ 16    With respect to its breach-of-contract claims, Gomberg Sharfman relied on Ms. Hughes's affidavit and the exhibits submitted in support of the original complaint, which were the retainer agreement and the monthly invoices in the two matters. It argued that the retainer agreement established that there was a valid, enforceable contract and that the invoices contained a "detailed breakdown of the work performed," which established the amounts Mr. Kuznar owed under the retainer agreement. Although not specifically referenced in the motion, Ms. Hughes's affidavit averred that Mr. Kuznar stopped making payments, even under a plan negotiated with the firm, in January 2018 and then indicated in a July 2018 email that he would not make payments to the firm until he had paid a $15,000 homestead exemption on the property he had acquired (on behalf of his mother's estate) through the levy matter.

¶ 17    With respect to Mr. Kuznar's affirmative defenses, Gomberg Sharfman did not identify any evidence defeating the defenses. Instead, it argued that Mr. Kuznar had failed to adequately plead any of his affirmative defenses by not alleging necessary elements or by alleging conclusions instead of facts.

¶ 18    With respect to the conflict-of-interest counterclaim, Gomberg Sharfman acknowledged that it was ethically prohibited from taking on a client if the representation "would be limited by the attorney's responsibilities to another client or third party," but it argued that no conflict existed because its relationship with Lavelle did not adversely impact its representation of Mr. Kuznar. It identified three exhibits attached to the motion in support of that argument. First, it relied on Ms. Hughes's affidavit, which averred that she was the primary attorney assigned to Mr. Kuznar's matters and that she had "never discussed" either matter with attorneys from Lavelle and that any relationship between the two firms or their attorneys "had no impact on" Gomberg Sharfman's representation of Mr. Kuznar. Second, it relied on a February 13, 2018 order in the levy matter approving the levy sale, awarding Mr. Kuznar possession of the property at issue, and ordering the

sheriff to issue a deed to Mr. Kuznar upon payment of a homestead exemption. Although not specifically cited in the motion for summary judgment, a May 15, 2018 order denying the opposing party's motion to reconsider was also attached. Third, it relied a motion filed by Mr. Kuznar in the foreclosure case seeking to postpone a hearing on Gomberg Sharfman's request to withdraw; among other things, the motion indicated that Mr. Kuznar intended to file a response explaining why allowing Gomberg Sharfman to withdraw "would seriously prejudice and injure his case." Again, although not specifically relied on in the motion, Gomberg Sharfman also attached what appears to be a motion prepared by Mr. Kuznar asking for leave to file that anticipated response.[4]

¶ 19    With respect to the fraudulent-billing component of Mr. Kuznar's breach-of-fiduciary-duty counterclaim, Gomberg Sharfman did not attach any exhibits. Instead, it simply argued that Mr. Kuznar's allegations failed to show that the November 2017 Westlaw charge was, in fact, fraudulent:

> "In support of his contention that Plaintiff fraudulently billed Defendant, Defendant alleges that 'the issues which Gomberg worked at the time required very little research, if any', and that 'According to Thompson Reuter's Westlaw website', users can expect to pay $107 per month or $99 per search. Defendant's opinion as to the amount of research to properly represent his interests is neither relevant nor does it constitute a fact to support a claim for fraud. Defendant is also not privy to the terms of Plaintiff's contract with Westlaw. Defendant's bare allegations fall far short of the heightened pleading standard required to allege a cause of action for fraud. Moreover, Plaintiff credited Defendant $3,397.55 in costs associated with Westlaw Research. *See Plaintiff's Complaint, page 4, ¶ 20*. Plaintiff did not offer Defendant a credit for these charges because they were fraudulent but rather as part of Plaintiff's efforts to resolve Defendant's unpaid invoices. Plaintiff's concession does not amount to common law fraud."

---

[4] We note that the docket in the foreclosure matter (Katherine Smolak v. Anna Kuznar *et al.*, No. 2017 CH 06179 (Cook County Cir. Ct.)) does not reflect that Mr. Kuznar filed a response to Gomberg Sharfman's motion to withdraw beyond his motion to postpone the withdrawal hearing. See *Deephaven Mortgage LLC v. Jones*, 2020 IL App (1st) 191468, ¶ 43 ("[W]e can take judicial notice of our circuit court dockets.").

¶ 20    Finally, with respect to the remaining allegations supporting the breach-of-fiduciary-duty counterclaim, Gomberg Sharfman's motion for summary judgment argued as follows. First, relying on Ms. Hughes's affidavit and court orders in the levy matter, the motion argued that the matter had required significantly more work than an ordinary case and that Mr. Kuznar had run up the bill further by placing unnecessary demands on his attorneys' time. It also noted that the "estimate" Mr. Kuznar had attached to his answer in support of this counterclaim was for costs only, not attorney fees. Second, relying on Ms. Hughes's affidavit, the motion argued that Mr. Kuznar, not Gomberg Sharfman, had breached the parties' contract by refusing to continue making payments. Third, relying on the retainer agreement, the motion argued that the parties' contract permitted it to retain Mr. Kuznar's case materials until he paid his bills in full. Fourth, it argued that there was no evidence supporting Mr. Kuznar's claim that his motion to dismiss in the foreclosure matter would have been granted if Gomberg Sharfman had not failed to file a reply. Fifth, relying on Ms. Hughes's affidavit, it argued that Mr. Kuznar had behaved inappropriately at the hearing on the motion to withdraw in the foreclosure matter, not Ms. Hughes.

¶ 21    After Gomberg Sharfman filed its motion for summary judgment, the case ground to a halt for more than a year, first due to pandemic-related closures and then for an unsuccessful referral to arbitration. With the summary-judgment motion still pending in the spring of 2021, the court set a schedule for Mr. Kuznar to file his response and Gomberg Sharfman to file its reply.

¶ 22    Mr. Kuznar filed a timely response to the summary-judgment motion in June 2021. Alongside that motion, he also filed a "motion to deem facts admitted" arguing that, because Gomberg Sharfman had filed a motion for summary judgment but not a "reply" to his affirmative defenses and counterclaims, it had admitted the allegations in those pleadings. In line with that motion, Mr. Kuznar's summary-judgment response argued that, in view of Gomberg Sharfman's admission of the facts underlying his affirmative defenses and counterclaims, summary judgment should not be entered on the affirmative defenses and counterclaims.

¶ 23     With respect to his conflict-of-interest counterclaim, Mr. Kuznar argued that Gomberg Sharfman's representation of him was in violation of Illinois Rules of Professional Conduct (2010) Rule 1.9(b) (eff. Jan. 1, 2010). He contended, essentially, that there was a genuine issue of material fact as to whether Gomberg Sharfman was aware of the conflict, arguing that the deposition testimony of Raymond Ostler that he did not learn about Mr. Kuznar's dispute with Lavelle until after Gomberg Sharfman had stopped representing him was contradicted by a handwritten notes taken by Ms. Hughes on the day of Mr. Kuznar's first meeting with Gomberg Sharfman's lawyers on September 9, 2016. The notes, which were attached as an exhibit to the response, recorded that there was a "[c]onflict w[ith] Lavelle," Mr. Kuznar's "previous attorneys," who had made "one mistake after another" before they had "parted ways" with Mr. Kuznar in April 2016. Although not specifically referenced, Mr. Kuznar also attached his own affidavit to the response. Among other things, his affidavit averred that he told Gomberg Sharfman attorneys during his first visit to the firm that he was "in a lawsuit with Lavelle."

¶ 24     The response also argued that Gomberg Sharfman was trying to stonewall Mr. Kuznar's efforts to ascertain the nature of its relationship with Lavelle. In support, Mr. Kuznar attached three discovery responses he had received from Gomberg Sharfman. In the first, which was a response to Mr. Kuznar's request for admissions, Gomberg Sharfman denied the allegation that "[a]t the time of hire [it] was asked about, and denied any current or ongoing professional relationship with Lavelle Law, Ltd.," and it denied the allegation that, "[i]n January 2018 [Mr. Kuznar's] Gomberg attorney admitted to [Mr. Kuznar] that he was working on a case with Lavelle Law, Ltd." The second response, which included answers to a series of interrogatories seeking to obtain specific information about Gomberg Sharfman's relationship with Lavelle between 2016 and 2018, declined to "[d]escribe the business relationships" that existed between the firms, "[i]dentify all legal work common to" the firms, "[s]tate the date and subject matter of any and all communications (oral or written) between or among" the firms, "[i]dentify or produce all documents reflecting or relating to" those communications, "[p]rovide an accounting of all

compensation, consideration, and/or value" exchanged "in connection with any transactions" between the firms, and identify all personnel at both firms that had been involved in communications between the two firms; Gomberg Sharfman objected to each of these requests on the basis that they were "not reasonably calculated to lead to the discovery of relevant evidence." The third response, which was also an answer to interrogatories, declined on the same ground to "[i]dentify and produce all documents and communications" between Gomberg Sharfman and any "person employed by, or otherwise associated with," Lavelle since the start of 2016.

¶ 25      In his summary-judgment response, Mr. Kuznar did not squarely address his counterclaim that Gomberg Sharfman breached its fiduciary duty by billing him fraudulent Westlaw charges as such, but it discussed the matter at length and referenced the counterclaim in the portion of the response opposing the entry of summary judgment on Gomberg Sharfman's breach-of-contract claims. The response argued in detail that the amounts billed by Gomberg Sharfman for Westlaw costs did not, in fact, represent the firm's "actual third party costs," as called for by the retainer agreement. That argument was supported by several documents attached to the response as exhibits showing that, rather than incurring costs on a transaction-by-transaction basis, Gomberg Sharfman paid a flat monthly fee to Westlaw in exchange for unlimited access to the materials included in their plan. Every month, Gomberg Sharfman would recoup that fixed subscription fee by charging each of its clients a portion of the fee that corresponded to the share of the firm's usage for the month that was attributable to that client, which it calculated based on what the "standard charge[s]" would have been in the absence of its subscription plan. In some months, this practice meant the amount billed to the firm's clients exceeded those hypothetical standard charges. As relevant to this appeal, the exhibits attached to the response show that the research performed in connection with Mr. Kuznar's foreclosure matter during October 2017 would have incurred only $864 in standard charges, but that research accounted for 64% of the firm's overall usage for the month, which was unusually low. Consequently, when it sent an invoice that included a November 1, 2017 charge for "Westlaw Research" during the preceding month, the firm billed Mr. Kuznar

not $941.76 (the standard charges plus a 9% tax) but $3397.55, which represented 64% of the firm's monthly subscription fee. Mr. Kuznar argued that these documents showed that the amounts billed to Gomberg Sharfman's clients as costs were "manufactured to meet the fixed monthly Westlaw charge."

¶ 26      The section of Mr. Kuznar's response addressing the breach-of-contract counterclaims also discussed two other components of his breach-of-fiduciary-duty counterclaim: his allegation that Gomberg Sharfman overbilled him in the levy matter and his allegation that it failed to file a reply brief in the foreclosure matter. In support of his overbilling claim, he attached not only the cost estimates that attorney Raymond Ostler had provided for the levy matter but also a later *fee* estimate. He also attached a portion of the transcript of Mr. Ostler's deposition where he reaffirmed that those estimates would have been "probably appropriate" for an uncontested case. In support of the claim related to the unfiled reply brief, Mr. Kuznar attached a copy of the order denying the motion to dismiss, which noted that he had "elected to not file a Reply." He also argued that the invoices attached to Gomberg Sharfman's complaint, which showed that the firm had billed him for a substantial amount of work on the unfiled reply, rebutted Mr. Ostler's deposition testimony opining that there was no need to file a reply.

¶ 27      The only other matter addressed in Mr. Kuznar's response was an argument that Gomberg Sharfman had prepared subpoenas to be served in Michigan in connection with the foreclosure matter but refused to send them.[5] In support, he attached admissions from Gomberg Sharfman that

---

[5]   It is not clear which issues in the case this argument pertained to. Although seemingly relevant to Mr. Kuznar's counterclaim that Gomberg Sharfman breached its fiduciary duty by withholding materials obtained in discovery, the basis of the counterclaim was Gomberg Sharfman's alleged refusal to turn over the documents it had received in discovery, not the materials it subsequently prepared in anticipation of conducting additional discovery. The argument that Gomberg Sharfman prepared, billed for, but never sent discovery requests would appear to be relevant to Mr. Kuznar first affirmative defense, which was the fees charged were unreasonable. This argument might also be relevant to his third affirmative defense, which alleged that Gomberg Sharfman breached the Illinois Consumer Fraud Act by, among other things, its "[r]efusal to provide filings and documents."

it prepared discovery materials and subpoenas in May 2018 but never "filed" them or took any other action in the case after May 15, 2018. He also attached a June 5, 2018 email he sent to Mr. Ostler about the subpoenas and the possibility of conducting depositions. He argued that, contrary to Mr. Ostler's deposition testimony, he did not raise any concerns about the cost of conducting the discovery.

¶ 28     Gomberg Sharfman failed to file its summary-judgment reply by the deadline of July 9, 2021. Five days later, on July 14, it filed two motions. The first motion explained that an "unexpected corporate matter" had required counsel's "immediate attention" and asked for leave to file the summary-judgment reply by July 16. The second motion, evidently made in response to Mr. Kuznar's motion to deem facts admitted, sought leave to file *instanter* a combined pleading replying to Mr. Kuznar's affirmative defenses and answering his counterclaims. In that latter motion, Gomberg Sharfman took the position that, although the court had allowed its motion for summary judgment to serve as its responsive pleading, a "formal" reply and answer was appropriate "for the purposes of clarity in the record under the circumstances of this case with a *pro se* defendant." Gomberg Sharfman served the motion on Mr. Kuznar on July 14 alongside a notice of motion indicating that it intended to present the motion to the trial court during Zoom proceedings on July 16. On that date, the trial court granted both motions, allowing Gomberg Sharfman to file a late summary-judgment reply and a combined reply and answer to Mr. Kuznar's affirmative defenses and counterclaims. The record does not include a transcript of the July 16 hearing, nor does it indicate which of the parties were present. Mr. Kuznar does not appear to have filed a written motion asking the court to reconsider its decision to grant Gomberg Sharfman leave to file a late reply and answer.

¶ 29     The only exhibits attached to Gomberg Sharfman's summary-judgment reply were a copy of the response to affirmative defenses and answer to counterclaims that it had filed only hours earlier and, despite being described as a "partial deposition transcript," what appears to be a complete transcript of Mr. Ostler's deposition. As relevant to this appeal, the reply argued that

(1) Mr. Kuznar's contention that its failure to reply to his affirmative defenses and answer to his counterclaims admitted those matters was mooted when it filed its reply and answer; (2) there was no conflict of interest because Lavelle was never Gomberg Sharfman's client; and (3) it was not asking Mr. Kuznar to pay any Westlaw charges, which, in any event, were actual third-party costs that he had agreed to pay.

¶ 30     A hearing was held on the motion for summary judgment on August 30, 2021. Again, the record does not include a transcript. After that hearing, the trial court entered a written order granting Gomberg Sharfman's motion for summary judgment with respect to Mr. Kuznar's affirmative defenses and all of his counterclaims but denying summary judgment on Gomberg Sharfman's breach-of-contract claims. The court also ordered the parties to exchange letters concerning Gomberg Sharfman's claims for, and Mr. Kuznar's payment of, any Westlaw charges:

> "7. The Defendant shall provide evidence of payments made to Plaintiff for Westlaw charges or that the Plaintiff claims Westlaw charges by letter to the Plaintiff's counsel on or before September 10, 2021.
>
> 8.  Defendant [*sic*] may then submit contrary evidence to the Plaintiff [*sic*] fourteen days thereafter by September 24, 2021."

If a dispute remained over Westlaw charges, the parties were ordered to submit letters to the court on the issue before a hearing set for October 13. A later email sent by Mr. Kuznar seemingly indicates that Gomberg Sharfman sent him a "Westlaw letter" on September 29 that had some kind of "statement" attached to it. The record does not reflect that any letters were filed with the court.

¶ 31     That hearing took place on October 13, 2021. Again, the record does not include a transcript. After the hearing, the court entered an order stating that Gomberg Sharfman had given it the following accounting of the amount of fees (excluding costs) it was claiming based on what it had billed Mr. Kuznar and what he had already paid:

|            | Fees billed | Amounts paid | Balance owed |
|------------|-------------|--------------|--------------|
| Levy       | $13,980.25  | $8,613.85    | $5,366.40    |
| Foreclosure| $31,230.10  | $3,910.15    | $27,319.95   |
| Totals     | $45,210.35  | $12,524.60[6]| $32,686.35   |

In accordance with this accounting, the court found that Mr. Kuznar was entitled to a credit of $12,524.60 against the fees billed by Gomberg Sharfman. The court also ordered that Gomberg Sharfman would be "barred from introducing evidence of and from claiming Westlaw costs and expenses as part of its claim for amounts due." The order did not specifically bar Gomberg Sharfman from claiming disbursements that were not related to Westlaw, but the firm concedes in its brief on appeal that it ultimately abandoned whatever right it had to recover costs under the retainer agreement.

¶ 32    The case proceeded to a two-day bench trial in April 2022, where, according to the court, the only remaining issue was the reasonableness of the attorney fees, a point which it reiterated at times during trial. Because the issues on appeal do not relate to the reasonableness of the various fees billed to Mr. Kuznar, we do not recount the trial testimony, which focused on that issue. As relevant to the issues before us, the court reaffirmed its October 13, 2021 order at the start of trial. When a Gomberg Sharfman attorney testified that the outstanding amount Mr. Kuznar owed was reflected in the October 13, 2021 order, Mr. Kuznar objected on the basis that the amounts stated in the order lacked adequate foundation. The trial court overruled the objection, explaining that it "would not have entered the order if it were not satisfied with the computations" and clarifying that the order reflected its finding as to "the maximum amount that [Gomberg Sharfman] could claim for fees." Gomberg Sharfman's invoices in the levy and foreclosure matters were introduced into evidence as plaintiff's exhibits 2 and 3, respectively.

¶ 33    After receiving written submissions in lieu of in-court closing arguments, on July 5, 2022, the court entered judgment in favor of Gomberg Sharfman in the amount of $28,026.60. One week

---

[6]    This figure appears to be the result of a typographical error. The sum of $8613.85 and $3910.15 is $12,524.00. The additional 60-cent credit was not carried over to the total amount owed.

later, it entered a supplemental order explaining how it had arrived at that figure. It first found that, per the October 13, 2021 order, Gomberg Sharfman was seeking a total of $32,686.35 in unpaid fees across both matters. The court stated that the amount sought by Gomberg Sharfman was based on "[t]he detailed breakdown of the work performed *** provided in the individual invoices introduced into evidence as plaintiff's exhibits 2 and 3." It found that the retainer agreement was a valid and binding contract that was effective as of September 9, 2016. Because the contract was valid, the court denied Gomberg Sharfman's "claims in *quantum meirut*." It then found that the fees sought by Gomberg Sharfman were reasonable and necessary except for $525 in fees that predated the start of the representation, $105 in fees that represented efforts to collect from Mr. Kuznar as opposed to legal work on his behalf, and $4,029.75 in fees for preparing a reply brief that was never filed.

¶ 34    Mr. Kuznar now appeals (1) the July 16, 2021 order granting Gomberg Sharfman leave to file a reply to affirmative defenses and answer to counterclaims, (2) the August 30, 2021 order entering summary judgment against him on his affirmative defenses and counterclaims, (3) the October 13, 2021 order specifying the amounts claimed by Gomberg Sharfman, and (4) the final judgment, including the July 5, 2022 judgment order and the July 12, 2022 supplement to that order.

¶ 35                                    ANALYSIS

¶ 36    At the outset, we note that the record on appeal does not include materials that would be relevant to the issues raised by Mr. Kuznar. As the appellant, Mr. Kuznar has a duty to "to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). A complete record includes not only the common-law record but also the report of proceedings. Ill. S. Ct. R. 321 (eff. Oct. 1, 2021). While the report of proceedings submitted by Mr. Kuznar includes a transcript of the bench trial in this case, it does not contain transcripts from any other hearings, including pretrial hearings that are relevant to the issues he raises on appeal. It also does not contain any adequate substitutes for transcripts, such as

bystander's reports or agreed statements of facts. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017). Without transcripts or appropriate substitutes, we do not know what evidence or arguments the parties put forward, and we are without the benefit of any oral explanations the trial court may have given for its decisions. See Ill. S. Ct. R. 323(a) (describing contents of report of proceedings). Consequently, to the extent that Mr. Kuznar has failed to provide a report of any particular proceeding, we must presume that the trial court's orders were "in conformity with law" and rested on "a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392. Similarly, any doubts arising from the incomplete record must be resolved against him. *Id.* The effect of the incomplete record as to the specific issues raised by Mr. Kuznar will be discussed in our analysis of each of those issues.

¶ 37        I. Leave to File Reply to Affirmative Defenses and Answer to Counterclaims

¶ 38    Mr. Kuznar first contends that the trial court erred by granting Gomberg Sharfman leave to file a late reply to his affirmative defenses and answer to his counterclaims. He primarily argues that the combination of Gomberg Sharfman's "undue delay" in filing its reply and answer and his inability to oppose its request for leave to file on short notice prejudiced him.

¶ 39    Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) permits the trial court to extend the time for filing a pleading "for good cause shown on motion after notice to the opposite party." The rule gives the court "broad discretion" to set and extend deadlines. *Miller v. Consolidated R. Corp.*, 173 Ill. 2d 252, 260 (1996). Whether there is good cause for extending a deadline or permitting a late filing "is fact-dependent and rests within the sound discretion of the circuit court." *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). We therefore review a decision to extend the time for filing a pleading for an abuse of discretion. *Id.* at 354. A trial court does not abuse its discretion unless its action is "arbitrary, fanciful, or unreasonable" or adopts a view that "no reasonable person would take." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 40    Here, we are unable to conduct that review because Mr. Kuznar has not provided us with a sufficiently complete record. The common-law record indicates that the trial court ruled on Gomberg Sharfman's motion for leave to file a belated reply and answer on July 16, 2021, but the

record on appeal contains neither a transcript of that proceeding nor an adequate substitute. As a result, we must presume that the trial court's order conformed with the law and rested on a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. We are therefore compelled to find that the trial court did not abuse its discretion. See *Gilmore v. City of Zion*, 237 Ill. App. 3d 744, 754 (1992) (presuming, in the absence of a transcript of the hearing, that the trial court did not abuse its discretion).

¶ 41    Mr. Kuznar also asserts in his brief on appeal that he did not receive notice of the hearing before it took place and that he would not have been able to attend due to being out of the country. We observe that the record appears to contradict Mr. Kuznar's claim that he was not provided with notice of the hearing on the motion. Although drafted somewhat ambiguously, the certificate of service states that service of the notice and the motion was accomplished via email for "all parties with email addresses listed below," and Mr. Kuznar was the only person on the service list with an email address. Furthermore, the trial court's July 16, 2021 order granting Gomberg Sharfman's motion states that "due notice ha[d] been served." The absence of a transcript of the hearing means that any lingering doubts about whether Mr. Kuznar was given proper notice must be resolved against him. *Foutch*, 99 Ill. 2d at 392.

¶ 42    Because we cannot find an abuse of discretion or that no notice was given, we reject Mr. Kuznar's argument that the trial court erred by granting Gomberg Sharfman leave to file a belated reply to affirmative defenses and answer to counterclaims.

¶ 43                        II. Summary Judgment on Mr. Kuznar's Counterclaims

¶ 44    Mr. Kuznar next contends that the trial court erred by entering summary judgment against him on his conflict-of-interest counterclaim and the component of his breach-of-fiduciary-duty counterclaim premised on an allegedly fraudulent Westlaw charge billed to him as a cost. He argues that there were genuine issues of material fact as to the existence of a conflict and the fraudulent nature of the Westlaw charge. He does not challenge the trial court's entry of summary judgment on the remaining allegations supporting his breach-of-fiduciary-duty counterclaim or on his

affirmative defenses, forfeiting any challenge to the propriety of entering summary judgment on those claims and the affirmative defenses. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 45    "The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). Summary judgment is appropriate if "the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 15. "Because summary judgment is a drastic means of disposing of litigation, a court must exercise extraordinary diligence in reviewing the record so as not to preempt a party's right to fully present the factual basis for its claim." *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 305. At this stage, plaintiffs need not prove their cases, and summary judgment should be granted only if "the right of the moving party is clear and free from doubt." *Id.*

¶ 46    On a motion for summary judgment, the movant has an initial burden of production. *Stearns v. Ridge Ambulance Service, Inc.*, 2015 IL App (2d) 140908, ¶ 20. As to claims being asserted against it, the movant can meet that initial burden by either affirmatively putting forward evidence that would entitle it to judgment as a matter of law if not controverted or by establishing that the other party does not have evidence sufficient to prove an essential element of the claim. *Id.* Once the movant satisfies its initial burden, the onus shifts to the opposing party to "present a factual basis that would arguably entitle the party to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002).

¶ 47    A trial court's ruling on a motion for summary judgment is reviewed *de novo*. *Thounsavath*, 2018 IL 122558, ¶ 16.

¶ 48                                   A.  Conflict of Interest

¶ 49     Mr. Kuznar argues that the trial court erred by entering summary judgment on his conflict-of-interest counterclaim because the evidence raised a question of fact as to the existence of a conflict of interest arising from Gomberg Sharfman's relationship with Lavelle.

¶ 50     We note that the legal basis for this counterclaim is ill-defined. Although the parties frame the issue on appeal in terms of the conflict-of-interest provisions of the Illinois Rules of Professional Conduct (2010), a violation of those rules "does not, in and of itself, give rise to a cause of action for damages." *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 353 (1st Dist. 2000); see Ill. R. Prof'l Conduct (2010) Preamble, ¶ 20 ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached."). Still, the existence of an undisclosed conflict of interest might support a claim for legal malpractice. See *Barth v. Reagan*, 139 Ill. 2d 399, 410 (1990) (recognizing that a conflict of interest can be relevant to the standard of care in a legal-malpractice action); *Nagy v. Beckley*, 218 Ill. App. 3d 875, 881 (1991) (recognizing that "rules of legal ethics may be relevant to the standard of care in a legal malpractice suit"); *Wissore v. Alvey*, 204 Ill. App. 3d 931, 940 (1990) (holding that allegations "rais[ing] a question as to whether a conflict of interest existed" were sufficient to state a claim for legal malpractice). In pleading the counterclaim, Mr. Kuznar alleged that Gomberg Sharfman owed him "a duty of care" that required it to conduct the representation "in accordance with relevant legal standards of care within the practice of law," and he alleged that the nondisclosure of the relationship with Lavelle was a breach of that duty. An attorney's breach of a duty of care is an essential element of a claim for legal malpractice. See *Hermansen v. Riebandt*, 2020 IL App (1st) 191735, ¶ 79 (reciting elements). Our analysis proceeds, then, on the assumption that the conflict-of-interest counterclaim was ultimately a claim for legal malpractice.[7]

---

[7]  In pleading his conflict-of-interest counterclaim, Mr. Kuznar incorporated paragraph C-1 of his affirmative defenses, which alleged that "[c]oncealing and denying conflict of interest" was among the practices used by Gomberg Sharfman in violation of the Consumer Fraud and

¶ 51    The first question in our analysis is whether Gomberg Sharfman satisfied its initial burden

of production when it moved for summary judgment on this counterclaim. When he pleaded the

conflict-of-interest counterclaim, Mr. Kuznar described the factual basis for the alleged conflict—

the purportedly close relationship between Gomberg Sharfman and Lavelle—but he did not specify

which rule or rules the conflict arose under. Under the rules, a "concurrent conflict of interest" can

arise from one of two situations:

> "A concurrent conflict of interest exists if:
>
> (1)  the representation of one client will be directly adverse
> to another client; or
>
> (2)  there is a significant risk that the representation of one
> or more clients will be materially limited by the lawyer's
> responsibilities to another client, a former client or a third person
> or by a personal interest of the lawyer." Ill. R. Prof'l Conduct
> (2010) R. 1.7(a) (eff. Jan. 1, 2010).

The conflict alleged by Mr. Kuznar did not involve any obligations Gomberg Sharfman had to any

current or former clients. Hence, if there was a conflict of interest, it could only be because

Gomberg Sharfman (or one of its attorneys) either had some kind of responsibility to Lavelle or a

personal interest involving Lavelle that risked affecting the firm's representation of Mr. Kuznar.

Gomberg Sharfman apparently operated on this assumption when it filed its motion for summary

judgment, which cited case law standing for essentially the same proposition. See *In re Winthrop*,

219 Ill. 2d 526, 550 (2006) (citing the former version of Rule 1.7(a)).

¶ 52    When it moved for summary judgment on this claim, Gomberg Sharfman argued that its

relationship with Lavelle, whatever its nature, played no role in how it represented Mr. Kuznar.

That argument was supported by the exhibits attached to the motion. The affidavit sworn by

---

Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2016)). This might support a
reading of the conflict-of-interest counterclaim as an attempt to plead a claim under that Act,
but the absence of any further reference to it, especially in light of the allegations concerning
Gomberg Sharfman's duty of care, convince us that the claim is better understood as alleging
legal malpractice.

Jennifer Hughes, the associate assigned to Mr. Kuznar's matters, averred that she had not spoken to anyone at Lavelle about those cases and that any relationship between the two firms had no impact on how Gomberg Sharfman represented Mr. Kuznar. In addition, the order from the levy matter established that, notwithstanding its relationship with Lavelle, Gomberg Sharfman obtained exactly what Mr. Kuznar had asked it to. Similarly, Mr. Kuznar's motion to postpone the withdrawal hearing in the foreclosure matter showed that, whatever concerns he may have had, he still trusted Gomberg Sharfman to act in his legal interest as long as the representation continued. We believe that, if not controverted, this evidence—in particular Ms. Hughes's averment that Gomberg Sharfman's relationship with Lavelle had no effect on the representation of Mr. Kuznar—would have entitled Gomberg Sharfman to judgment as a matter of law. Thus, Gomberg Sharfman met its initial burden of production. See *Stearns*, 2015 IL App (2d) 140908, ¶ 20. At that point, the burden shifted to Mr. Kuznar "to present some factual basis that would arguably entitle [him] to judgment under the applicable law." (Internal quotation marks omitted.) *Id.* (quoting *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89 (2000)).

¶ 53    The question becomes whether Mr. Kuznar satisfied that burden. In his response, Mr. Kuznar made four fundamental points. First, he identified the alleged conflict as being a violation of Rule 1.9(b). See Ill. R. Prof'l Conduct (2010) R. 1.9(b) (eff. Jan. 1, 2010). Second, he argued that Gomberg Sharfman's motion for summary judgment admitted that there was some kind of relationship between lawyers at the two firms. Third, he argued that Raymond Ostler's deposition testimony that he was not aware that Lavelle had sued Mr. Kuznar was contradicted by a handwritten memorandum prepared by Jennifer Hughes. Fourth, he complained that Gomberg Sharfman had refused discovery requests aimed at obtaining evidence about its relationship with Lavelle.

¶ 54    First, Mr. Kuznar's reliance on Rule 1.9, which he renews on appeal, is misplaced. Rule 1.9(b) governs how to assess whether a conflict that would have been imputed to an attorney at a law firm follows that attorney even after he or she leaves the firm. The rule provides as follows:

> "A lawyer shall not knowingly represent a person in the same or
> a substantially related matter in which a firm with which the lawyer
> formerly was associated had previously represented a client
>
> > (1) whose interests are materially adverse to that person;
> > and
> >
> > (2) about whom the lawyer had acquired information
> > protected by Rules 1.6 and 1.9(c) that is material to the matter;
> > unless the former client gives informed consent." *Id.*

By its plain terms, a conflict of interest cannot arise under this rule unless the lawyer was formerly associated with a different firm and that the former firm had, at some point, represented another client with materially adverse interests. Simply put, it is not applicable to the alleged conflict arising from the relationship between Gomberg Sharfman and Lavelle, and Mr. Kuznar did not put forward any evidence that it was.

¶ 55    Second, Mr. Kuznar correctly noted in his response that Gomberg Sharfman's summary-judgment motion conceded "that some of [Gomberg Sharfman's] and Lavelle's attorneys have or had personal and professional relationships with one another." That admission was buttressed by Mr. Ostler's deposition testimony that those relationships went back "[p]robably 25 years." Ms. Hughes's affidavit and remarks attributed to Mr. Ostler in Mr. Kuznar's affidavit also established that Lavelle had leased office space from Gomberg Sharfman as recently as 2013, although Lavelle had vacated the premises at least a year before Mr. Kuznar retained Gomberg Sharfman. Furthermore, according to Mr. Kuznar's affidavit, Mr. Ostler told him in 2018 that he was working on a case with Jennifer Burt, the Lavelle attorney who had represented Kuznar in early 2016. To establish a conflict, however, it is not enough to show that a relationship existed. A conflict would arise only if, as the result of some responsibility or personal interest arising out of the relationship, the lawyer's ability to represent the client would be "materially limited." Ill. R. Prof'l Conduct (2010) R. 1.7(a)(2) (eff. Jan. 1, 2010). Examples of personal interests that might materially limit the lawyer's ability to represent a client include interviewing for employment with the client's opponent or opposing counsel and referring clients to businesses in which the lawyer has a stake.

Ill. R. Prof'l Conduct (2010) R. 1.7 cmt. 10 (eff. Jan. 1, 2010). Likewise, a lawyer who happens to serve as "as a trustee, executor or corporate director" assumes fiduciary responsibilities to third parties that might materially limit the representation of a client. Ill. R. Prof'l Conduct (2010) R. 1.7 cmt. 9 (eff. Jan. 1, 2010). And those kinds of interests and responsibilities do not ordinarily accompany personal or professional relationships, not even ones that stretch back a quarter of a century. At the summary-judgment stage, Mr. Kuznar did not have to *prove* that Gomberg Sharfman's relationship with Lavelle risked impairing its representation of him. But he did have to provide some kind of evidence that could conceivably support such a finding. In view of Ms. Hughes's averment that any relationship with Lavelle had no impact on Gomberg Sharfman's representation of Mr. Kuznar, evidence that there was merely some kind of relationship between the firms and their attorneys, without more, did not raise a genuine issue of material fact as to the existence of a conflict of interest.

¶ 56    Third, it is true that Mr. Kuznar showed that there was a factual dispute about when, precisely, Gomberg Sharfman learned that Mr. Kuznar had an adversarial relationship of some kind with Lavelle. At his deposition, Mr. Ostler testified that he did not learn about Mr. Kuznar's dispute with Lavelle until after Gomberg Sharfman had ended its representation of him. That was contradicted by Ms. Hughes's handwritten notes from a September 9, 2016 meeting with Mr. Kuznar, which reflected that he told them during the meeting about his "conflict w[ith] Lavelle," which had made "one mistake after another" before it "parted ways" with him in April 2016. Mr. Kuznar's own affidavit also stated that, when he met with Mr. Ostler in September 2016, he disclosed that Lavelle had sued him. Nevertheless, the timing of Gomberg Sharfman's learning about Mr. Kuznar's dispute with Lavelle makes no difference unless, in light of the relationship between the two firms, it gave rise to a conflict of interest. Ms. Hughes averred that any such relationship did not affect Gomberg Sharfman's representation of Mr. Kuznar, and nothing in her meeting notes or Mr. Ostler's deposition contradicted that.

¶ 57    Fourth, we understand Mr. Kuznar's frustration at Gomberg Sharfman's objections to discovery requests directed at uncovering information about the nature of the firm's relationship with Lavelle on the basis that they were "not reasonably calculated to lead to the discovery of relevant evidence." Specific information about the relationship between the firms and their respective attorneys was plainly relevant to whether there was a conflict of interest. Whether Mr. Kuznar's requests might have been objectionable for some other reason, they were certainly not irrelevant. But the way to resolve Gomberg Sharfman's apparently frivolous objections to those relevant discovery requests would have been to file a motion to compel under Illinois Supreme Court Rule 219(a) (eff. July 1, 2022), and the record does not show that Mr. Kuznar did so. He also did not submit an affidavit indicating that he was unable to obtain material facts from Gomberg Sharfman or some other person or entity "by reason of hostility or otherwise," which could have prompted the court to postpone ruling on the summary-judgment motion pending further discovery. See Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). We note that, on April 8, 2021, the trial court entered an order quashing Mr. Kuznar's discovery requests involving communications between Gomberg Sharfman and Lavelle attorney Jennifer Burt, but it did so without prejudice, and it invited Mr. Kuznar to "address the relevancy of that requested discovery *** in his response." Mr. Kuznar did not take the opportunity to do so, nor did he file a motion to compel or request further discovery under Rule 191(b). Accordingly, Gomberg Sharfman's refusal to provide potentially relevant information in discovery is not a valid reason for reversing the trial court's entry of summary judgment on the conflict-of-interest claim. *Cf. Intercontinental Parts, Inc. v. Caterpillar, Inc.*, 260 Ill. App. 3d 1085, 1090-91 (1994) (rejecting plaintiff's argument that summary judgment should not have been entered due to inadequate discovery because plaintiff failed to file a motion to compel or a Rule 191(b) affidavit).

¶ 58    Finally, we note that, on appeal, Mr. Kuznar also relies on materials that were not before the trial court when it entered summary judgment. He argues that Mr. Ostler's and Ms. Hughes's trial testimony shows a genuine factual dispute over when Gomberg Sharfman became aware of

his dispute with Lavelle. He further argues that the relationship between Gomberg Sharfman and Lavelle is shown by two news articles. The first, an article from *Crain's Chicago Business* that he submitted to the trial court with his closing argument, discloses that the attorney who had handled his case at Lavelle in early 2016 had "clerked" at Gomberg Sharfman's predecessor as a law student before graduating in 2007. The second article, which was published in the *Daily Herald* while this appeal was pending in August 2022, shows that four Gomberg Sharfman attorneys, including Mr. Ostler, were joining Lavelle.[8] It also quotes Lavelle founding partner Kerry Lavelle's description of a "strong working relationship with Gomberg Sharfman" that went back "several decades." "Our review of summary judgment orders is typically limited to the materials of record that were before the circuit court at the time summary judgment was entered." *Chernyakova v. Puppala*, 2019 IL App (1st) 173066, ¶ 2. Because this evidence was not before the trial court when it entered summary judgment, we do not consider it.

¶ 59    In sum, Ms. Hughes averred that Gomberg Sharfman's relationship with Lavelle did not affect its representation of Mr. Kuznar, and Mr. Kuznar failed to identify evidence arguably showing otherwise. Accordingly, there was no genuine issue of material fact as to the existence of a conflict, and the trial court correctly entered summary judgment in favor of Gomberg Sharfman on Mr. Kuznar's conflict-of-interest counterclaim.

¶ 60                    B.  Breach of Fiduciary Duty Involving Westlaw Charge

¶ 61    Mr. Kuznar argues that the trial court should not have granted summary judgment on his claim that Gomberg Sharfman breached its fiduciary duty to him by billing him for fraudulent legal-research costs. A claim for breach of fiduciary duty has three elements: (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) an injury proximately caused by that breach.

---

[8]    The other three attorneys who joined Lavelle were all partners: Robert Gomberg, Kimberly Padjen (who handled communications with Mr. Kuznar related to billing and payment before and after the firm terminated the representation), and John Lydon (Gomberg Sharfman's counsel of record at trial and on appeal in this case).

*Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125773, ¶ 47. The parties obviously do not dispute that, as Mr. Kuznar's attorney, Gomberg Sharfman owed him a fiduciary duty. See *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9 (2004) ("[T]he attorney-client relationship is a fiduciary relationship.") Mr. Kuznar argues on appeal that there was a genuine issue of material fact as to whether the November 2017 Westlaw charge was fraudulent. Because a fraudulent charge would be contrary to a fiduciary's duty of honesty (*Metrick v. Chatz*, 266 Ill. App. 3d 649, 656 (1994)), this argument is directed to the element of breach.

¶ 62    On appeal, Gomberg Sharfman does not dispute Mr. Kuznar's argument that there was a genuine issue of material fact as to whether the November 2017 Westlaw charge was a breach of its fiduciary duty. The bulk of its argument in response to this claim of error addresses whether the trial court properly entered summary judgment on Mr. Kuznar's affirmative defenses—rulings that he does not challenge on appeal. As relevant to this counterclaim, Gomberg Sharfman argues only that Mr. Kuznar failed to demonstrate that he was damaged by the Westlaw charge.

¶ 63    Initially, we decline to consider Gomberg Sharfman's damages argument because it did not move for summary judgment on the basis that there was no genuine issue of material fact with respect to damages or injury. Its argument with respect to this claim was instead directed to the propriety of the charge, which, as noted above, goes to the element of breach. [9] While the motion argued that Gomberg Sharfman had "credited [Mr. Kuznar] $3,397.55 in costs associated with Westlaw Research," it did so only to argue that the credit did not amount to a concession that the charge itself was fraudulent. A motion for summary judgment should not be granted on a basis not raised by one of the parties because doing so deprives the nonmoving party of the opportunity to produce evidence showing that a genuine issue of material fact exists. See *Miwel, Inc. v. Kanzler*, 2019 IL App (2d) 180931, ¶¶ 9-14. An appellee may raise an issue for the first time on appeal in

---

[9]    We observe that the motion for summary judgment misconstrued Mr. Kuznar's claim as being for common–law fraud, not the breach of fiduciary duty. Nevertheless, its arguments would have been equally applicable to the breach element of Mr. Kuznar's claim.

order to sustain the trial court's judgment, but only if "the factual basis for the issue was before the trial court." *DOD Technologies v. Mesirow Insurance Services, Inc.*, 381 Ill. App. 3d 1042, 1050 (2008). And here, Gomberg Sharfman's failure to move for summary judgment on the ground that no genuine issue of fact existed as to damages means that Mr. Kuznar had no opportunity to develop the factual basis for that claim in the trial court.

¶ 64    The dispositive question, then, is whether there was a genuine issue of material fact as to whether Gomberg Sharfman breached its fiduciary duty to Mr. Kuznar. As noted in our discussion of the facts, the motion for summary judgment argued, in essence, that the November 2017 Westlaw charge was not fraudulent. But Gomberg Sharfman did not attach any evidence supporting that argument, nor did it explain why it believed that Mr. Kuznar would not be able to show that billing that charge constituted a breach of its fiduciary duty, so it did not carry its initial burden of production. See *Stearns*, 2015 IL App (2d) 140908, ¶ 20. Accordingly, summary judgment should not have been entered on this claim.

¶ 65    Even if Gomberg Sharfman had met its initial burden of production, we would still find that summary judgment should not have been entered because Mr. Kuznar's response showed that there was a genuine issue of material fact. Per the retainer agreement, Mr. Kuznar was required to reimburse Gomberg Sharfman for any "actual third-party costs" incurred for performing computerized legal research. But evidence attached to Mr. Kuznar's response to the motion for summary judgment makes it apparent that the November 2017 Westlaw charge did not represent any "actual *** costs" incurred in connection with Mr. Kuznar's cases. Instead of paying for research *à la carte*, Gomberg Sharfman paid a fixed monthly subscription fee to Westlaw that was not affected by its actual usage. The charge billed to Mr. Kuznar represented a pro-rated share of that flat fee. By sending him an invoice for a Westlaw charge that was not an "actual *** cost[]," Gomberg Sharfman might have knowingly misrepresented the nature of the charge, which would constitute a breach of its fiduciary duty to him. See *Metrick*, 266 Ill. App. 3d at 656 ("The fiduciary duty owed by an attorney to a client encompasses the obligations of fidelity, honesty, and good

faith."). Hence, there was a genuine issue of fact as to whether Gomberg Sharfman breached its fiduciary duty.

¶ 66    Because Gomberg Sharfman did not carry its initial burden of production and because the materials identified in Mr. Kuznar's response show that there is genuine issue of material fact as to whether the Westlaw charge amounted to a breach of Gomberg Sharfman's fiduciary duty, we find that the trial court erred by entering summary judgment on Mr. Kuznar's breach-of-fiduciary-duty claim as it pertained to the Westlaw charges. We therefore reverse the trial court's judgment as to that claim and remand for further proceedings.

¶ 67                              III.  Damages Calculation

¶ 68    In his final argument on appeal, Mr. Kuznar attacks the trial court's October 13, 2021 order stating the amount of attorney fees claimed by Gomberg Sharfman and the amount credited against those fees based on his previous payments, which the court later used as a baseline for its final damages calculation. He argues that the amounts stated in the order were not backed up by evidence, an objection that he also made at trial. We note that Mr. Kuznar's briefs do not cite any legal authority in support of this claim, as required by the rules. See Ill. S. Ct. R. 341(h)(7). His argument, however, is easily understood as an attack on the weight of the evidence to support the damages award. In fact, that is how Gomberg Sharfman construes the argument in its brief. We agree with this understanding, so we exercise our discretion to reach the merits despite Mr. Kuznar's deficient brief. See *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 293 (1991) (noting that this court may consider an issue not adequately briefed when the appellee files a brief that "is sufficient to apprise us of [the appellant's] arguments").

¶ 69    When a trial court sits as trier of fact, we defer to its factual findings unless they are against the manifest weight of the evidence. *Wade v. Stewart Title Guaranty Co.*, 2017 IL App (1st) 161765, ¶ 59. A finding is against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 70    We note that the record does not include a transcript of the hearing that preceded the October 13, 2021 order. Normally, the absence of that transcript would leave us unable to evaluate how the trial court calculated the amounts stated in the order. In its supplement to the final judgment order, however, the trial court explained that the amounts stated in the October 13, 2021 order were based on "the individual invoices introduced into evidence as plaintiff's exhibits 2 and 3." Those invoices, which were attached to Gomberg Sharfman's complaint, are part of the record, so we are able to ascertain the evidentiary basis for the trial court's damages calculation.

¶ 71    Per our review of the invoices, Gomberg Sharfman billed Mr. Kuznar the following amounts, broken down into fees and disbursements, in each respective matter (amounts stated in dollars):

Levy Matter

| Invoice Date | Fees | Disbursements | Total Charges |
| --- | --- | --- | --- |
| Dec. 31, 2016 | 3681.50 | 105.15 | 3786.65 |
| Mar. 3, 2017 | 663.75 | 458.00 | 1121.75 |
| May 8, 2017 | 609.00 | 630.00 | 1239.00 |
| June 7, 2017 | 377.00 | 0.20 | 377.20 |
| July 13, 2017 | 1395.00 | 71.40 | 1466.40 |
| Jan. 12, 2018 | 1704.00 | 152.80 | 1856.80 |
| Feb. 6, 2018 | 731.25 | 11.20 | 742.45 |
| Mar. 8, 2018 | 750.00 | 0.00 | 750.00 |
| Apr. 5, 2018 | 3005.25 | 8.35 | 3013.60 |
| June 5, 2018 | 1063.50 | 0.00 | 1063.50 |
| All Months | 13,980.25 | 1437.10 | 15,417.35 |

Foreclosure Matter

| Invoice Date | Fees | Disbursements | Total Charges |
|---|---|---|---|
| July 13, 2017 | 1,569.00 | 0.00 | 1569.00 |
| Aug. 8, 2017 | 5,356.00 | 368.00 | 5724.00 |
| Sept. 7, 2017 | 2,407.00 | 497.21 | 2904.21 |
| Oct. 9, 2017 | 2,211.50 | 0.00 | 2211.50 |
| Nov. 7, 2017 | 4,195.60 | 0.00 | 4195.60 |
| Dec. 20, 2017 | 3,563.75 | 3397.55 | 6961.30 |
| Jan. 10, 2018 | 408.00 | 0.00 | 408.00 |
| Feb. 6, 2018 | 605.00 | 0.00 | 605.00 |
| Mar. 8, 2018 | 3,395.50 | 3.95 | 3399.45 |
| Apr. 9, 2018 | 551.00 | 7.90 | 558.90 |
| May 15, 2018 | 2,795.50 | 0.00 | 2795.50 |
| June 6, 2018 | 2,288.50 | 0.00 | 2288.50 |
| All Months | 29,346.35 | 4274.61 | 33,620.96 |

The total amounts precisely match the amounts stated in the complaint, which alleged that Gomberg Sharfman billed $15,417.35 in connection with the levy matter and $33,620.96 in connection with the foreclosure matter. Excluding costs (disbursements), these invoices would support a finding that Gomberg Sharfman billed Mr. Kuznar a total of $43,326.60 in attorney fees: $13,980.25 in the levy matter, and $29.346.35 in the foreclosure matter.

¶ 72     The October 13, 2021 order stated that Mr. Kuznar was billed $13,980.25 in fees for the levy matter and $31,230.10 in fees for the foreclosure matter, and the trial court relied on those findings when it entered judgment. The calculation of fees for the levy matter was fully supported by the invoices. The calculation of the fees for the foreclosure matter, however, was not. As indicated above, Gomberg Sharfman's own invoices show that it billed Mr. Kuznar only $29,346.35 in fees, an amount $1883.75 lower than what was stated in the October 13, 2021 order. To the extent that the trial court found that Gomberg Sharfman billed more than $29,346.35 in fees in connection with the foreclosure matter, that finding was not supported by evidence, which means it was against the manifest weight of the evidence.

¶ 73     The parties do not challenge the trial court's finding that $4659.75 of the fees billed were not necessary and reasonable or its finding that Mr. Kuznar had already paid Gomberg Sharfman a total of $12,524.60. Subtracting those two amounts from the total amount of fees billed

($43,326.60) leaves a balance of $26,142.25 still owed to Gomberg Sharfman. We therefore modify the trial court's judgment by reducing the damages awarded to $26,142.25. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994); *Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015, ¶ 70.

¶ 74                                       CONCLUSION

¶ 75    Because a genuine issue of material fact existed as to whether the November 2017 Westlaw charge amounted to a breach of Gomberg Sharfman's fiduciary duty, we reverse the entry of summary judgment on that claim and remand for further proceedings. We modify the judgment as to Gomberg Sharfman's breach-of-contract claims by reducing damages to the amount supported by the evidence, which is $26,142.25.  In all other respects, we affirm the trial court's judgment.

¶ 76    Affirmed in part as modified and reversed in part.

¶ 77    Cause remanded.