# Illinois Official Reports

## Supreme Court

---

### *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558

---

| | |
|---|---|
| Caption in Supreme Court: | PHOUNGEUN THOUNSAVATH, Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant. |
| Docket No. | 122558 |
| Filed | March 22, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |
| Counsel on Appeal | Frank C. Stevens, of Taylor Miller LLC, of Chicago, for appellant. |
| | Eric J. Parker, of Stotis & Baird Chtrd., of Chicago, for appellee. |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

¶ 1        Plaintiff Phoungeun Thounsavath sought underinsured motorist coverage from defendant, State Farm Mutual Automobile Insurance Company (State Farm), stemming from an automobile accident that occurred while she was a passenger in a vehicle driven by Clinton Evans. State Farm denied plaintiff's claim for underinsured motorist coverage based upon a driver exclusion endorsement in plaintiff's automobile liability insurance policies with State Farm. The driver exclusion endorsement named Clinton Evans as an excluded driver.

¶ 2        Both parties filed complaints for declaratory judgment. On cross-motions for summary judgment, the trial court granted summary judgment in favor of plaintiff. The appellate court affirmed. 2017 IL App (1st) 161334. This court allowed State Farm's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2017).

¶ 3                                BACKGROUND

¶ 4        State Farm issued two policies of motor vehicle insurance to plaintiff. One policy insured a 1998 Pontiac Grand Am, and one policy insured a 2004 Pontiac GTO. Each policy provided liability, uninsured motorist, and underinsured motorist coverage in the amounts of $100,000 per person and $300,000 per accident. Both policies contained a "Driver Exclusion Endorsement" that excluded Clinton M. Evans. Driver exclusion endorsements are also referred to as named driver exclusions. Specifically, the driver exclusion endorsement provided:

> "IT IS AGREED *WE* SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO *US* FOR *BODILY INJURY, LOSS* OR DAMAGE UNDER ANY OF THE COVERAGES OF THIS POLICY WHILE ANY MOTOR VEHICLE IS OPERATED BY: CLINTON M. EVANS." (Emphases in original.)

¶ 5        On June 17, 2012, plaintiff was a passenger in a 2007 Hyundai automobile that was owned and operated by Clinton Evans when Evans's vehicle was involved in an accident with another automobile. Plaintiff was injured in the accident. Plaintiff made a claim for damages against Clinton Evans for her personal injuries. Evans's insurer, American Access Insurance Company, paid plaintiff's claim in the amount of $20,000, the policy limit. Plaintiff then filed a claim for underinsured motorist coverage with State Farm for the June 17, 2012, accident. State Farm denied plaintiff's claim based upon the driver exclusion endorsement.

¶ 6        Plaintiff subsequently filed a complaint for declaratory judgment in the circuit court of Cook County, seeking a declaration that she was entitled to underinsured motorist coverage under her State Farm policies. Plaintiff alleged that she purchased automobile insurance policies from State Farm that included underinsured motor vehicle coverage for bodily injury. Plaintiff noted that she was involved in a motor vehicle accident while a passenger in a vehicle owned by Clinton Evans and sustained over $30,000 in medical bills related to the accident. Clinton Evans was at fault for the accident, and his insurer tendered the full policy limits of $20,000 to plaintiff. Plaintiff then sought to recover pursuant to the underinsured motorist coverage of her State Farm policies, but State Farm denied the claim, citing the named driver exclusion stating that Clinton Evans was an excluded driver. Plaintiff asserted that section 143a-2 of the Illinois Insurance Code (215 ILCS 5/143a-2 (West 2012)) required all policies of

insurance to provide underinsured motorist coverage to the named insured, so that State Farm's denial of plaintiff's underinsured motorist coverage violated the statute, as well as Illinois public policy. Plaintiff therefore sought a declaration that State Farm must provide her with underinsured motorist coverage under her State Farm policies.

¶ 7        State Farm filed an answer to plaintiff's complaint for declaratory judgment, denying that section 143a-2 of the Insurance Code required all policies of insurance to provide underinsured motorist coverage to the named insured. State Farm also filed a counterclaim for declaratory judgment, noting that it had issued two policies of automobile insurance to plaintiff. Both policies contained a driver exclusion endorsement, signed by plaintiff, which excluded coverage for bodily injury, loss, or damage under the policies while any motor vehicle is operated by Clinton Evans. State Farm denied that either of plaintiff's automobile insurance policies provided underinsured motorist coverage for the June 17, 2012, accident because all coverages were excluded while Clinton Evans operated any motor vehicle. State Farm sought a declaratory judgment in its favor declaring that there was no underinsured motorist coverage available to plaintiff under either policy for the June 17, 2012, accident, that State Farm had no duty to arbitrate any claim for underinsured motorist coverage made by plaintiff under either policy, and that there was no coverage of any kind available to plaintiff under either policy for the accident of June 17, 2012.

¶ 8        The circuit court ordered both parties to file cross-motions for summary judgment. State Farm filed a motion for summary judgment, arguing that the driver exclusion endorsement in both automobile policies issued to plaintiff did not violate the Insurance Code or the public policy of the state of Illinois. The circuit court denied State Farm's motion for summary judgment. Plaintiff then filed her motion for summary judgment, which the circuit court granted.

¶ 9        State Farm appealed, arguing that its driver exclusion endorsement did not violate section 143a-2 of the Insurance Code or Illinois public policy. The appellate court affirmed the circuit court. 2017 IL App (1st) 161334.

¶ 10        The appellate court noted that, under section 7-601(a) of the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) (625 ILCS 5/7-601(a) (West 2012)), a part of the Illinois Vehicle Code (Vehicle Code), no one may operate a motor vehicle or allow a vehicle to be operated without obtaining sufficient insurance. 2017 IL App (1st) 161334, ¶ 16. In addition, sections 143a and 143a-2 of the Insurance Code (215 ILCS 5/143a, 143a-2 (West 2012)) require automobile liability insurance policies to include uninsured and underinsured motorist coverage. 2017 IL App (1st) 161334, ¶ 17. The appellate court acknowledged that, in general, named driver exclusions in automobile liability insurance policies are permitted in Illinois. *Id.* ¶ 22. However, the cases cited by State Farm in support of its named driver exclusion were distinguishable, as the named driver exclusions in those cases were enforced as to parties other than the named insured. *Id.* ¶ 23.

¶ 11        The appellate court stated that the issue in this case was whether the named driver exclusion violated Illinois's mandatory insurance requirements and public policy where the exclusion barred coverage for the named insured. Although none of the cases cited by either party addressed that precise issue, the appellate court found the analysis in *American Access Casualty Co. v. Reyes*, 2013 IL 115601, to be instructive.

¶ 12    The issue in *Reyes* was whether an automobile liability policy could exclude the only named insured and owner of the vehicle without violating public policy. *Reyes* noted that the plain and unambiguous language of section 7-317(b)(2) of the Vehicle Code (625 ILCS 5/7-317(b)(2) (West 2010)) mandated that an automobile liability policy cover the "person named therein." *Reyes*, 2013 IL 115601, ¶ 11. Because Reyes was the only person "named therein," Reyes could not be excluded from coverage through a contractual provision. *Id.*

¶ 13    Similar to *Reyes*, the appellate court held that a named driver exclusion in an insured's automobile liability insurance policy that bars liability, uninsured, or underinsured coverage for the named insured violates Illinois's mandatory insurance requirements and Illinois public policy. 2017 IL App (1st) 161334, ¶ 34. Accordingly, the appellate court held that the named driver exclusion endorsements in plaintiff's automobile liability policies with State Farm were not enforceable against plaintiff, the named insured.

¶ 14                                         ANALYSIS

¶ 15    As noted, this case was decided based upon the parties' motions for summary judgment. Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2012)). Pursuant to section 2-1005, summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The construction of the terms of an insurance policy and whether the insurance policy comports with statutory requirements present questions of law that are properly decided on a motion for summary judgment. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399 (2010).

¶ 16    The granting of a summary judgment motion is subject to *de novo* review. *Id.* at 399-400. In addition, the determination of whether a provision in a contract, insurance policy, or other agreement is invalid because it violates public policy also presents a question of law, which is reviewed *de novo*. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 54 (2011).

¶ 17    An insurance policy is a contract, so the rules applicable to contract interpretation govern the interpretation of an insurance policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). A court's primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Id.* If the insurance policy terms are clear and unambiguous, they must be enforced as written, unless doing so would violate public policy. *Schultz*, 237 Ill. 2d at 400. The public policy of this state is reflected in its constitution, statutes, and judicial decisions. *Id.* If the terms of an insurance contract conflict with a statute, those terms are void and unenforceable. *Id.* Terms of an insurance policy also cannot circumvent the underlying purpose of a statute in force at the time the policy is issued. *Id.*

¶ 18    With some exceptions not at issue in this case, section 7-601(a) of the Financial Responsibility Law requires liability insurance coverage for all motor vehicles designed to be used on a public highway. 625 ILCS 5/7-601(a) (West 2012). The liability insurance policy must provide certain minimum liability amounts. Those amounts, both currently and at the time of the accident at issue in this case, are $20,000 for bodily injury or death to one person as a result of any one accident, $40,000 for bodily injury or death of all persons as a result of any one accident, and $15,000 for damage to the property of others as the result of any one accident. See *id.* §§ 7-203, 7-317(b)(3). The liability insurance policy must also comply with

specific coverage requirements, insuring not only the persons named in the policy but also "any other person using or responsible for the use" of the subject vehicle with the express or implied permission of the insured. *Id.* § 7-317(b)(2). The main purpose of the mandatory liability insurance requirement is to protect the public by securing payment of their damages. *Reyes*, 2013 IL 115601, ¶ 8.

¶ 19     In addition to motor vehicle liability insurance coverage, the Insurance Code requires automobile liability insurance policies to also include uninsured motorist coverage. 215 ILCS 5/143a (West 2012). If the limits for the insured's liability coverage exceed the minimum amounts required by law, the uninsured motorist provisions must provide the same higher coverage amounts unless the excess amount is specifically rejected by the insured. *Id.* § 143a-2(1). The uninsured motorist coverage must extend to all who are insured under the policy's liability provisions. *Schultz*, 237 Ill. 2d at 403.

¶ 20     If the insured's uninsured motorist coverage limit exceeds the minimum liability limit required by the Financial Responsibility Law, the policy must also include underinsured motorist coverage in an amount equal to the uninsured motorist coverage. 215 ILCS 5/143a-2(4) (West 2012). As with uninsured motorist coverage, the underinsured motorist coverage must extend to all those who are insured under the policy's liability provisions. *Schultz*, 237 Ill. 2d at 401. In contrast to the uninsured motorist provision, the underinsured motorist provision does not include a right of rejection.

¶ 21     As noted, in this case plaintiff was injured in an automobile accident while a passenger in Clinton Evans's automobile. Plaintiff sought to recover underinsured motorist benefits pursuant to her automobile liability policies with State Farm because the policy limits in Clinton Evans's automobile liability insurance policy were not sufficient to compensate plaintiff for her injuries. As in the lower courts, State Farm claims that plaintiff is not entitled to recover under her policies because Clinton Evans was excluded from coverage under the driver exclusion endorsement in plaintiff's policies. State Farm argues that named driver exclusions are permitted in Illinois and that plaintiff knew when she signed the driver exclusion endorsements in her policies that State Farm would not pay any liability of any kind, under any coverage, when Clinton Evans operated any automobile. Accordingly, State Farm maintains that plaintiff is not entitled to recover underinsured benefits under her policies with State Farm.

¶ 22     State Farm is correct that, in general, named driver exclusions are permitted in Illinois. *Reyes*, 2013 IL 115601, ¶ 15. We also agree with State Farm that it was entitled to identify Clinton Evans as an individual for whom it would not provide insurance coverage. However, Clinton Evans is not seeking insurance coverage from State Farm under plaintiff's policies. It is plaintiff who is attempting to collect under her policies with State Farm.

¶ 23     In finding that the exclusion in this case was unenforceable against plaintiff, the appellate court found the *Reyes* decision to be instructive. State Farm distinguishes this case from *Reyes* on the basis that the exclusion in *Reyes* was directed at the sole named insured and owner, an exclusion which conflicted with the plain language of section 7-317(b)(2) of the Financial Responsibility Law. In contrast to *Reyes*, plaintiff in this case, the sole named insured and owner, was not excluded from liability coverage for her operation of any vehicle. State Farm also notes that *Reyes* dealt only with liability coverage, while plaintiff's claim here is for underinsured motorist coverage. Finally, State Farm observes that *Reyes* did not hold that a

named driver exclusion *per se* violates the Financial Responsibility Law. Accordingly, State Farm argues that the appellate court erred in relying on *Reyes* to find the driver exclusion endorsement in this case unenforceable.

¶ 24 State Farm's focus in distinguishing *Reyes* is misplaced. The appellate court discussed *Reyes* because it found the analysis in *Reyes* instructive. That analysis addressed whether an exclusion directed to a mandatory statutory provision was enforceable. Whether an exclusion directed to a mandatory statutory provision is enforceable is also at issue in this case, albeit in the context of underinsured motorist coverage rather than liability coverage.

¶ 25 The main purpose of the mandatory liability insurance requirement is "to protect the public by securing payment of their damages." *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129 (2005). To further that end, the legislature requires uninsured motorist coverage to place the policyholder in substantially the same position he would occupy if the tortfeasor had the minimum liability insurance required by the Financial Responsibility Law. *Rosen*, 242 Ill. 2d at 57. Thus, while mandatory liability insurance attempts to ensure that all drivers carry at least $20,000 of bodily injury coverage, mandatory uninsured motorist coverage protects a driver who has complied with the liability coverage requirement when she is injured by a driver who has not. *Id.* at 68. Moreover, the legislative purpose of underinsured motorist coverage is the same as that of uninsured motorist coverage, which is " 'to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.' " *Id.* at 57 (quoting *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992)). If the tortfeasor is insured, but for an amount less than the claimant has bargained for and paid for with her own insurer, mandatory underinsured motorist coverage in an amount equal to her uninsured motorist coverage ensures that the claimant will still be compensated up to the limits of her own uninsured motorist policy. *Id.* at 69.

¶ 26 Therefore, under Illinois law, liability, uninsured motorist, and underinsured motorist coverage are " 'inextricably linked.' " *Id.* at 58 (quoting *Schultz*, 237 Ill. 2d at 404). Liability, uninsured motorist, and underinsured motorist coverages all "serve the same underlying public policy: ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents." *Id.*

¶ 27 The court in *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 444-45 (1998), recognized that "[b]oth the underinsured and uninsured motor vehicle provisions contemplate that consumers will select the total 'package' of coverage, *i.e.*, liability, uninsured and underinsured, in amounts they *themselves* deem adequate for their own protection." (Emphasis in original.) Thus, underinsured motorist coverage protects the insured from the risk that a negligent driver of another vehicle "(i) will cause injury to the insured \*\*\* and (ii) will have inadequate liability coverage to compensate the injuries caused by his or her negligence." *Id.* at 445. Underinsured motorist coverage guarantees the protection of an injured insured against the possibility that a tortfeasor, over whom the insured has no control, purchases inadequate amounts of liability coverage. *Id.*

¶ 28 That is exactly the situation in the instant case. Plaintiff purchased liability, uninsured motorist, and underinsured motorist coverage in an amount she deemed adequate for her own protection. Plaintiff had no control over the amount of liability insurance coverage that Clinton Evans purchased for his own vehicle. The liability insurance coverage that Clinton Evans

purchased for his own vehicle was inadequate, so plaintiff sought the protection of the underinsured motorist coverage that she purchased from State Farm.

¶ 29 State Farm argues, however, that because plaintiff signed the driver exclusion endorsement naming Clinton Evans, plaintiff was precluded from recovering underinsured motorist coverage for an accident where Clinton Evans was the tortfeasor. State Farm claims that plaintiff was free to make her own contract with State Farm and chose to sign a contract with a driver exclusion endorsement naming Clinton Evans. State Farm also argues that plaintiff did have control over Evans and his decision to purchase minimal liability coverage because plaintiff had control over her choice to ride as a passenger in Evans's vehicle or in any vehicle operated by Evans.

¶ 30 An insurance policy is a contract, but the terms of an insurance contract must comport with the statutory requirements in effect when the policy is issued. *Schultz*, 237 Ill. 2d at 408. Insurers have no right to depart from valid statutory requirements in their policies. *Id.* Therefore, the fact that plaintiff signed the driver exclusion endorsement is not dispositive. We must determine whether that exclusion is consistent with the relevant statutes and underlying purpose of the statutes.

¶ 31 Neither the statute nor the case law places any restriction on the right of the parties to an insurance contract to agree on which persons are to be the "insureds" under an automobile insurance policy. *Heritage Insurance Co. of America v. Phelan*, 59 Ill. 2d 389, 395 (1974). However, once a person qualifies as an insured for purposes of the policy's bodily injury liability provisions, she must be treated as an insured for purposes of uninsured and underinsured motorist coverage as well. *Schultz*, 237 Ill. 2d at 404. Consequently, just as the governing statutes prohibit an insurance company from directly or indirectly denying uninsured motorist coverage to someone who qualifies as an insured for purposes of liability coverage, the statutes prohibit companies from directly or indirectly denying underinsured coverage to such a person when the basic liability coverage exceeds the statutory minimum. *Id.*

¶ 32 In this case, State Farm and plaintiff agreed that Clinton Evans was not an "insured" under plaintiff's automobile liability insurance policies. However, the parties agreed that plaintiff was an insured. Once plaintiff was designated an "insured" under her policies with State Farm, then, State Farm was prohibited from either directly or indirectly denying her underinsured motorist coverage.

¶ 33 Section 143a of the Insurance Code is plain and unambiguous in mandating that each policy must contain the specified uninsured motorist coverage. *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 176 (1977). *Squire* recognized that the public policy of this state concerning uninsured motorist coverage is that no automobile liability insurance policy shall be issued unless coverage is provided therein against damages caused by uninsured motorists. *Id.* The "statutory coverage is mandatory, and it may not be whittled away by an unduly restrictive definition." (Internal quotation marks omitted.) *Barnes v. Powell*, 49 Ill. 2d 449, 453 (1971). In addition, section 143a-2 of the Insurance Code is plain and unambiguous in mandating that where uninsured motorist coverage in a policy exceeds the limits set forth in section 7-203 of the Financial Responsibility Law (625 ILCS 5/7-203 (West 2012)), each policy must include underinsured motorist coverage in an amount equal to the total amount of uninsured motorist coverage. 215 ILCS 5/143a-2(4) (West 2012).

¶ 34    In this case, plaintiff and State Farm contracted for liability insurance in the amounts of $100,000 per person and $300,000 per accident, which exceeded the minimum statutory limits. Pursuant to section 143a of the Insurance Code, State Farm was required to include uninsured motorist coverage in those amounts in plaintiff's policies unless plaintiff specifically rejected the higher coverage amounts. Plaintiff did not reject the higher coverage amounts. Accordingly, section 143a-2 required plaintiff's policies to also include underinsured motorist coverage in amounts equal to her uninsured motorist coverage. The uninsured and underinsured amounts are mandated by statute.

¶ 35    Because the underinsured motorist coverage was mandated by statute, State Farm's driver exclusion endorsement could not exclude that coverage through a contractual provision. Under the facts of this case, application of the driver exclusion to bar plaintiff, the named insured, from recovering underinsured motorist coverage pursuant to her policies with State Farm violates section 143a-2(4) and, therefore, public policy.

¶ 36    In so holding, we note that the cases cited by State Farm in support of its position are distinguishable from the instant case. For example, in *Phelan*, 59 Ill. 2d 389, the court held that the excluded driver was not an insured under his father's policy, so that the excluded driver could not collect uninsured motorist coverage pursuant to that policy. *Phelan* would be controlling if it was Evans, the excluded driver, seeking to recover under plaintiff's policies with State Farm. *Phelan*, however, is inapposite under the facts of this case. Here, it is the named insured, and not the excluded driver, who is seeking underinsured motorist coverage.

¶ 37    State Farm also relies on *Rockford Mutual Insurance Co. v. Economy Fire & Casualty Co.*, 217 Ill. App. 3d 181 (1991). In that case, a passenger was killed while riding in a vehicle driven by an excluded driver. When the insurer of the vehicle driven by the excluded driver denied coverage for the death of the passenger based upon the named driver exclusion, the mother of the passenger sought uninsured motorist benefits pursuant to her own automobile insurance policy. The mother's insurer filed a complaint for declaratory judgment, claiming that, to the extent the named driver exclusion barred uninsured motorist coverage with respect to the passenger, the exclusion violated the public policy of section 143a and was unenforceable and void. *Id.* at 183-84.

¶ 38    The appellate court disagreed, noting that if a passenger is injured while riding in an uninsured vehicle, the passenger must look to his own policy for recovery under its uninsured motorist provision. *Id.* at 187. The court explained that it did not violate public policy to recognize the named driver exclusion endorsement, which rendered an otherwise insured vehicle uninsured, because the intention and purpose of section 143a was to provide recovery for insureds under their own uninsured motorist provisions. *Id.*

¶ 39    State Farm cites *Rockford Mutual* in support of its claim that enforcing its named driver exclusion does not violate the public policy of section 143a-2. *Rockford Mutual*, however, actually supports plaintiff's position in this case. As discussed, *Rockford Mutual* held that if a passenger is injured while riding in an uninsured vehicle, the passenger must look to his own policy for recovery under its uninsured motorist provision. *Id.* Like section 143a concerning uninsured motorist coverage, the intention and purpose of section 143a-2 is to provide recovery for insureds under their own underinsured motorist provisions. Here, plaintiff was injured while a passenger in a vehicle that was underinsured. Plaintiff therefore sought recovery under her own policy under its underinsured motorist provision.

¶ 40    State Farm also claims that the decisions in *Villicana*, 181 Ill. 2d 436, and *Fuoss v. Auto Owners (Mutual) Insurance Co.*, 118 Ill. 2d 430 (1987), support its argument that policy exclusions do not become unenforceable merely because the named insured is the person seeking the coverage. Those decisions, however, also are inapposite.

¶ 41    In *Villicana*, the insured had two separate policies insuring two vehicles, one of which had higher policy limits than the other. The insured's daughter was injured while riding as a passenger in the vehicle insured with lower limits. Because the damages incurred by the insured's daughter exceeded the amounts she recovered from the driver of her father's car and from the liability policy on that car, she filed a claim for underinsured benefits pursuant to the policy insuring her father's other vehicle. That policy contained a "family car exclusion." The family car exclusion prevented an automobile, which is furnished for the regular use of the insured, the insured's spouse, or any relative who lives with the insured, from being deemed an underinsured motor vehicle. The issue before the court was whether an underinsurance policy could exclude benefits to a family member who is injured in a different family automobile. *Villicana*, 181 Ill. 2d at 438-41.

¶ 42    *Villicana* held that, under the circumstances of the case, the exclusion could be enforced. *Id.* at 441. The court noted that the underinsured motorist statute was enacted to afford consumers the means with which they could protect themselves from the choices of other drivers over whom they had no control. In the case before it, the amount of liability and underinsured coverage selected for the vehicle involved in the accident was within the control of the insured, who chose lower limits for that vehicle than for his other vehicle. *Id.* at 446-47.

¶ 43    Here, in contrast, plaintiff had no control over the amount of liability insurance purchased by Clinton Evans for his own vehicle. As plaintiff observes, the law allows State Farm to refuse liability coverage to Clinton Evans, and once Evans was named as an excluded driver in plaintiff's policies, plaintiff was obligated to make sure that Evans did not drive her vehicles. The accident in this case did not occur while Evans was driving one of plaintiff's vehicles. The accident occurred when plaintiff was riding as a passenger in Evans's vehicle.

¶ 44    The named driver exclusion did not prevent Clinton Evans from driving his own, separately insured vehicle. The Financial Responsibility Law required Evans to obtain liability insurance in at least minimum liability amounts, which he did. Although State Farm argues that plaintiff had control over choosing whether to ride as a passenger in Clinton Evans's vehicle, we do not read the underinsured motorist statute as requiring an insured to determine a driver's limits of liability coverage before riding in his vehicle in order to recover underinsurance benefits.

¶ 45    *Fuoss* also is distinguishable from this case. The insured in that case purchased liability coverage in the amounts of $25,000 per person and $50,000 per accident and uninsured motorist coverage in the amount of $15,000 per person and $30,000 per accident. The insurer, however, failed to offer the insured underinsured motorist coverage.[1] The insured was injured in an automobile accident and settled with the tortfeasor for $100,000, the maximum amount payable under the tortfeasor's liability policy. The insured then sued his insurer, asking the

---

[1]The statute in effect at the time of the *Fuoss* decision stated that when an offer of uninsured motorist coverage was made to the insured, that offer should also include an offer of underinsured motorist coverage. See Ill. Rev. Stat. 1981, ch. 73, ¶ 755a-2(3).

court to reform his original insurance policy to include sufficient amounts of underinsured motorist coverage to compensate him for all the damages from the accident, which he claimed exceeded the $100,000 that he recovered from the tortfeasor. *Fuoss*, 118 Ill. 2d at 431-32.

¶ 46 The *Fuoss* court noted that section 143a-2(4) provided that an insured may elect to purchase limits of underinsured motorist coverage in an amount up to the uninsured motorist coverage on the insured vehicle, which under the insured's policy was $15,000 per person and $30,000 per accident. *Id.* at 433-34. Even if the insured's policy was reformed to increase his uninsured motorist coverage to the amount of his bodily injury liability limits, and thereby also increase his underinsured motorist coverage, that amount would be $25,000 per person and $50,000 per accident, less than the $100,000 that the insured received from the tortfeasor. *Id.* The court found the insured's claim that he would have purchased a sufficient amount of underinsurance to cover his loss, had the insurance been offered, was too speculative. *Id.* The court stated that permitting the insured to choose underinsured motorist coverage after the fact, in an amount greater than he originally selected for bodily injury liability coverage, would be " 'repugnant to our system of justice' " because the insured would be providing more protection for himself than he was willing to extend to the general public. *Id.* at 435 (quoting *Fuoss v. Auto Owners (Mutual) Insurance Co.*, 148 Ill. App. 3d 526, 535 (1986)).

¶ 47 State Farm suggests that plaintiff in this case is attempting to secure more protection for herself than she was willing to extend to the general public when she agreed to and signed the named driver exclusion. This is incorrect. The accident in this case happened while Clinton Evans was driving his own vehicle, insured under his own policy. If a member of the general public was injured in an accident with Clinton Evans, he or she could recover from Evans under Evans's liability policy. If that individual's underinsured motorist policy provided higher limits than Evans's liability policy, they could seek underinsured motorist coverage under their policy, as plaintiff is doing in this case. A member of the general public has the same right as plaintiff to obtain higher limits of underinsured motorist coverage from their insurer.

¶ 48 None of the cases cited by State Farm support its claim that the driver exclusion endorsement in plaintiff's policies could deny plaintiff underinsured motorist coverage under the facts of this case. Section 143a mandates that every automobile liability insurance policy provide uninsured motorist coverage in at least the minimal amounts required under the Vehicle Code. If the insured's uninsured motorist coverage limit exceeds the minimum liability limit required by the Financial Responsibility Law, as plaintiff's did, section 143a-2 mandates that the policy also include underinsured motorist coverage in an amount equal to the uninsured motorist coverage. Because section 143a-2 mandated that plaintiff's policy include underinsured motorist coverage, excluding plaintiff from underinsured motorist coverage through a contractual provision violates section 143a-2 and, therefore, public policy, under the facts of this case. The driver exclusion endorsement in plaintiff's policies with State Farm was not enforceable to exclude underinsured motorist coverage to plaintiff for the June 17, 2012, accident. Accordingly, the appellate court properly affirmed the trial court's order granting summary judgment in favor of plaintiff on her complaint for declaratory judgment.

¶ 49                                    CONCLUSION

¶ 50        For all the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the trial court's order denying State Farm's motion for summary judgment and granting plaintiff's motion for summary judgment.

¶ 51        Appellate court judgment affirmed.