2025 IL App (1st) 231694-U

No. 1-23-1694

Order filed May 16, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELLEN BEARD, JEFF BEARD and MARY BEARD, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2019 CH 12566 |
| ECONOMY PREFERRED INSURANCE COMPANY, a Wholly Owned Subsidiary of Economy Fire & Casualty Insurance Co., Which Is a Wholly Owned Subsidiary of Metropolitan Property & Casualty Company d/b/a Metlife Auto & Home and d/b/a Metlife, | ) ) ) ) ) ) ) ) | Honorable Celia G. Gamrath, Judge, presiding. |
| Defendant-Appellee. | ) | |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's grant of summary judgment for defendant is affirmed where the application of an exclusion in the insureds' uninsured motorist endorsement did not violate public policy and the insurer did not lose its ability to assert a lack of coverage through waiver or estoppel.

¶ 2    In this insurance coverage dispute, plaintiffs Jeff, Mary, and Ellen Beard appeal the circuit court's grant of summary judgment for defendant Economy Preferred Insurance Company. The

principal issue is whether the circuit court erred in applying an exclusion in the Beards' policy to bar coverage for Ellen Beard in light of the relevant public policy. For the following reasons, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4      In October 2017, plaintiff Ellen Beard was in an automobile accident in Libertyville, Illinois. She was driving her 2015 Cadillac sedan, which she insured through defendant.

¶ 5      In early November, Ellen's counsel notified defendant of her claim. A few months later, with defendant's approval, she settled her claim against the other driver involved for $50,000, which was his insurance carrier's policy limit. She then demanded payment from defendant under her own policy, which had a policy limit of $250,000 in uninsured motorist coverage per person and listed her 2015 Cadillac as an insured vehicle. Defendant and Ellen agreed that she was entitled to $200,000 under her policy, which represented her $250,000 policy limit less the $50,000 settlement she had already received. Defendant then paid Ellen $200,000.

¶ 6      Ellen demanded additional uninsured motorist coverage from defendant under the policies belonging to her parents, plaintiffs Jeff and Mary Beard. The Beards had an automobile insurance policy and a personal excess liability policy with defendant. The personal excess liability policy stated that it was "subject to all of the terms and conditions of the uninsured/underinsured coverage provided in the underlying policy." Defendant denied coverage on the grounds that Ellen did not reside with her parents as was required for coverage and that an exclusion in her parents' automobile policy applied. Because the excess liability policy adopted the terms and conditions of the automobile insurance policy, defendant did not cover her under the excess liability policy either.

¶ 7      In October 2019, plaintiffs filed a complaint against defendant alleging that Jeff and Mary Beards' policies covered Ellen and seeking declaratory relief to that effect. On cross motions for summary judgment, the circuit court entered judgment for defendant. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 8                                        II. ANALYSIS

¶ 9                                        A. Exclusion G

¶ 10      Defendant relied in part on an exclusion in the Beards' uninsured motorist coverage endorsement, Exclusion G, to deny coverage to Ellen. Exclusion G excludes from coverage any "relative" who "owns, leases, or has available for their regular use, an auto which is insured for uninsured motorists coverage or underinsured motorists coverage on a primary basis under any other policy."

¶ 11      Assuming, as plaintiffs argue, that Ellen is a "relative" under the policy, plaintiffs contend that Exclusion G is void on public policy grounds because it operates to deny coverage to Ellen even though she is an insured under the liability portion of the policy. Additionally, it deprives her of coverage merely because she has chosen to purchase additional insurance from defendant. Defendant argues that Ellen is not covered under the liability portion of the policy, rendering plaintiffs' case law requiring uninsured motorist coverage inapposite, and that Exclusion G is authorized by the Illinois Insurance Code. We review a summary judgment ruling, the construction of an insurance policy, and the construction of relevant statutes *de novo. Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 16.

¶ 12      In construing an insurance policy, a court must discern and effectuate the intent of the parties based on the plain language of the agreement. *State Farm Mutual Automobile Insurance*

*Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998). "We will apply those terms as written unless such application contravenes public policy." *Id.* at 442. The parties do not dispute whether Exclusion G applies to Ellen, only whether the exclusion can be enforced in light of relevant public policy. Thus, two questions determine the outcome: why does the state of Illinois require uninsured motorist coverage, and does denial of uninsured motorist coverage to Ellen under Exclusion G contravene that purpose? To identify the relevant public policy, we look to our "constitution, statutes, and judicial decisions." *Galarza v. Direct Auto Insurance Co.*, 2023 IL 129031, ¶ 38.

¶ 13　　In Illinois, automobile insurance coverage, including uninsured motorist coverage, is governed by statute. The Illinois Safety and Family Financial Responsibility Law "requires liability insurance coverage for all motor vehicles designed to be used on a public highway." *American Access Casualty Co. v. Reyes*, 2013 IL 115601, ¶ 8 (citing 625 ILCS 5/7-601(a)). The Illinois Insurance Code requires that automobile liability policies include a minimum amount of uninsured motorist coverage. 215 ILCS 5/143a (West 2016). If the policy limits for uninsured motorist coverage exceed the statutory minimum, the policy must also include underinsured motorist coverage. *Id.* § 143a-2(4) (West 2016); *Thounsavath*, 2018 IL 122558, ¶ 19.

¶ 14　　Mandatory uninsured and underinsured motorist coverage share the same legislative purpose, which is to "place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance." (Internal quotation marks omitted.) *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 57 (2011) (quoting *Sulser v. Country Mutual Insurance Co.,* 147 Ill. 2d 548, 555 (1992)). However, the Code contains a critical exception to that mandate that permits insurers to exclude vehicles that are available for the regular use of the insured or their resident relative and that are not listed in the policy:

"Uninsured motor vehicle coverage does not apply to bodily injury, sickness, disease, or death resulting therefrom, of an insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative, if that motor vehicle is not described in the policy under which a claim is made or is not a newly acquired or replacement motor vehicle covered under the terms of the policy." 215 ILCS 5/143a(1).

*Direct Auto Insurance Co. v. Merx*, 2020 IL App (2d) 190050, ¶¶ 33, 36 (referring to the carveout as allowing an "owned-vehicle" exclusion). This court has extended the owned-vehicle exception to underinsured motorist coverage as well. *Goldstein v. Grinnell Select Insurance Co.*, 2016 IL App (1st) 140317, ¶¶ 26-27 (deciding the issue as a matter of first impression).

¶ 15    "Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case." (Internal quotation marks omitted.) *Galarza*, 2023 IL 129031, ¶ 39. Here, the accident occurred while Ellen Beard was driving her 2015 Cadillac, which she leased. She insured that vehicle under her own, separate policy with defendant under which she was the named insured. Defendant paid her $200,000 under that policy for bodily injuries resulting from the accident—the uninsured motorist policy limit less the $50,000 settlement paid by other driver's insurance company.

¶ 16    The Beards' policy listed Ellen as a household driver but did not list her 2015 Cadillac as an insured vehicle. It is therefore true that the accident did not involve any of the vehicles listed in the Beards' policy, and as plaintiff argues, an insurer may not bar an insured from coverage simply because they are riding in a vehicle not listed in the policy. *Merx*, 2020 IL App (2d) 190050, ¶ 42. But exclusion here does not turn on the fact that Ellen was not in a covered vehicle; instead, Ellen

is excluded because the vehicle she *did* occupy was one available for her regular use but not insured under the policy at issue. The distinction is "subtle, yet determinative of the issue at bar." *Id.* at ¶ 33.

¶ 17    Crucially, Ellen was injured "while occupying a motor vehicle *** available for [her] regular use" that was "not described in the policy under which [her] claim [was] made." 215 ILCS 5/143a(1). Plaintiffs seek to invalidate Exclusion G on public policy grounds, but statutes are themselves "an expression of public policy." *St. Paul Fire & Marine Insurance Co. v. Smith*, 337 Ill. App. 3d 1054, 1058 (2003). By adding the owned-vehicle exception to the uninsured motorist statute, the legislature has conveyed that not extending uninsured motorist coverage to Ellen on these facts is consistent with the public policy of this state. *Merx*, 2020 IL App (2d) 190050, ¶ 33 (quoting 215 ILCS 5/143a); *cf. Phoenix*, 242 Ill. 2d at 66. The application of Exclusion G to Ellen Beard therefore cannot be said to violate the public policy expressed by the uninsured motorist statute when the statute itself authorizes it. *Goldstein*, 2016 IL App (1st) 140317, ¶ 23 ("[T]he legislature chose to override the public policy behind the uninsured-motorist statute as to this exclusion *** .").

¶ 18    As plaintiffs point out, one can imagine a situation in which Exclusion G creates a different result. Exclusion G could exclude an insured solely because they owned a second vehicle for which they purchased a policy from defendant, whether they occupied that vehicle during the accident or not. In that regard, defendant overstates Exclusion G's conformity with the owned-vehicle exception. But other than pointing out this possibility and noting its absurdity, plaintiffs do not explain the public policy implications or point to case law that invalidates the exclusion as written.

¶ 19    More importantly, plaintiffs are arguing a case that is not before this court. The Illinois Supreme Court has repeatedly analyzed whether an insurance policy violates public policy by examining the application of the contested language to the facts and circumstances of the case before it. See, *e.g.*, *Villicana*, 181 Ill. 2d at 441, 453-56 (reversing the appellate court's determination that an exclusion violates public policy based on how it "could operate in some circumstances"); *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148, 157, 161 (rejecting plaintiff's argument where "[t]he fundamental problem with the plaintiff's argument is that he is asking this court to address a scenario that is not present in this case, namely, what he would have been entitled to recover had he *not* purchased the *** policy" and determining that "[b]ecause enforcement of the clause does not violate public policy *in this case*, the policy must be applied as written" (Emphasis added.)). That Exclusion G's language is arguably vulnerable to challenge on public policy grounds in another case with different facts does not warrant a departure from the plain language of the statute.

¶ 20    Further, requiring coverage on these facts would undermine the purpose of the owned-vehicle exception added by the legislature. "Insurance companies make underwriting decisions and calculate policy premiums based on the characteristics of a policyholder, the risks the policyholder presents, and the contractual terms and limitations by which the policyholder agrees to be bound." *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 135 (2005). Insurers are unlikely to have contemplated a blank-check policy that can be retroactively applied to vehicles that an insured owned but chose not to insure:

"Most policies limit the basic [uninsured motorist] coverage to the vehicle upon which it was purchased, except as to the carryover effect when operating, or riding in, a nonowned

vehicle. It is scarcely the purpose of any insurer to write a single [uninsured motorist] coverage upon one of a number of vehicles owned by an insured, or by others in the household, and extend the benefits of such coverage gratis upon all other vehicles—any more than it would write liability, collision, or comprehensive coverages upon one such vehicle and indemnify for such losses as to any other vehicle involved. *** It would be actuarially unsound." Appleman, Insurance Law and Practice § 5078.15 (1981).

*Kopier v. Harlow*, 291 Ill. App. 3d 139, 145 (1997) (explaining that an exclusion for vehicles owned but not insured under the relevant policy "prevents someone from paying a high premium on only one vehicle and expecting to access that coverage for other vehicles for which lower premiums were paid"); *Ryan v. State Farm Mutual Automobile Insurance Co.*, 397 Ill. App. 3d 48, 51-52 (2009) (rejecting an interpretation of a policy that "violates the purpose of the [owned-vehicle] exclusion by significantly increasing the risk to State Farm without any corresponding increase in premiums"). If an insured wants coverage for a vehicle available for their regular use, an insurer may require them to list that vehicle on the policy and pay a premium that accounts for the risk the insurer has assumed on that vehicle without violating public policy.

¶ 21    Finally, plaintiffs point to cases from the Illinois Supreme Court for the principle that "once a person qualifies as an insured for purposes of the policy's bodily injury liability provisions, she must be treated as an insured for purposes of uninsured and underinsured motorist coverage as well." *Thounsavath*, 2018 IL 122558, ¶ 31; *Galarza*, 2023 IL 129031, ¶ 45. That principle does not require a different outcome here because Ellen was not an "insured" as defined in the liability section of the Beards' auto policy. The Beards' policy defines "insured" as:

"1. with respect to a covered auto:

        a.  you;

        b.  any relative;

\*\*\*

    2.  with respect to a non-owned auto, you or any relative. The use must be within the scope of the permission given to you or a relative."

Ellen was not driving a covered auto. She was also not driving a non-owned auto where the definition of non-owned auto does not include vehicles "owned by, furnished to, or made available for regular use by you, or any relative." The liability policy does not include Ellen as an "insured" on these facts such that the uninsured motorist provisions of the policy must cover her. *Thounsavath*, 2018 IL 122558, ¶ 31.

¶ 22    On this point, plaintiffs argue that "[c]learly, as a relative of Jeff and Mary Beard, [Ellen] is covered under the liability portion of these policies at various times." But under the plain language of the liability portion's definition of "insured," a "relative" is only covered with respect to an owned auto or an auto not made available for any relative's regular use. Even assuming Ellen is a "relative," as we do here, that alone does not render her an "insured" under the Beards' automobile liability policy.

¶ 23    For the foregoing reasons, Exclusion G operates to bar coverage for Ellen Beard under the Beards' policy. Because an exclusion bars coverage, we need not address whether Ellen was a covered "relative" based on her residence at the time of the accident.

¶ 24                  B. Waiver of Defenses and Equitable Estoppel

¶ 25    Plaintiffs argue that defendant waived any defense to coverage under the Beards' policies in a November 2017 letter that referenced the Beards' personal excess liability policy while

discussing coverage under Ellen's policy. Defendant contends that the letter only served to acknowledge the claim, not to waive defenses.

¶ 26    Waiver and estoppel cannot create coverage where none exists. *Schuster v. Occidental Fire & Casualty Co. of North America*, 2015 IL App (1st) 140718, ¶ 29; *Lytle v. Country Mutual Insurance Co.*, 2015 IL App (1st) 142169, ¶ 30; *Apollo Casualty Co. v. Jordan*, 2021 IL App (1st) 190658-U, ¶¶ 76-77 (refusing to apply waiver and estoppel to require coverage for a vehicle not listed in the relevant policy). Plaintiffs argue that waiver would not create coverage because the Beards' uninsured motorist coverage insured against the exact risk that came to pass in this case— that an uninsured motorist would cause an accident. Because they are seeking coverage for an event within the ambit of uninsured motorist coverage generally, they contend that they are not attempting to create coverage. *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 77.

¶ 27    However, Exclusion G applies, and we have determined that public policy does not prohibit its application here. Defendant therefore did not cover Ellen Beard under the Beards' underinsured motorist policy while she occupied her 2015 Cadillac not described in that policy, and we will not enlarge the policy to bring that vehicle within its terms. See *Jennings v. Bituminous Casualty Corp.*, 47 Ill. App. 2d 243, 251 (1964).

¶ 28    Additionally, the exchange between plaintiffs' attorney and defendant does not rise to the level of waiver or estoppel. Plaintiffs argue that defendant waived any policy defenses in its response to a letter from plaintiffs' counsel notifying defendant of Ellen's claim and requesting coverage. Waiver is an "intentional relinquishment of a known right." (Internal quotation marks omitted.) *Claxton v. Board of Trustees of City of Alton Firefighters' Pension Fund*, 2023 IL App

(5th) 220200, ¶ 29. Waiver may be express or implied, and rises from "acts, words, conduct, or knowledge of the insurer." *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 499 (1985). Implied waiver requires "a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." (Internal quotation marks omitted.) *Claxton*, 2023 IL App (5th) 220200, ¶ 31. "[E]stoppel is applicable where the conduct of one side [has] induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." (Internal quotation marks omitted.) *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 12 (1993).

¶ 29    Defendant's letter to plaintiffs requested documents for defendant's investigation of the claim and stated: "We provide automobile insurance coverage for Ellen L. Beard with effective dates of 9/29/2017 through 9/29/2018. They have liability limits of 250000.00/500000.00 Uninsured Motorist Bodily Injury per person / per occurrence. They have UM liability limits of $1 Million." The dates and the bodily injury limit match Ellen's policy. The reference to a $1 million limit is consistent with the Beards' personal excess liability policy. Neither matches the Beards' underlying automobile policy that is the basis for Ellen's claim for uninsured motorist coverage. The letter is the sum of the words, acts, and conduct that give rise to the purported waiver, but it does not include any reference to the automobile policy at issue, its effective dates, or its limits as it does for Ellen's policy. The letter simply does not amount to a "clear, unequivocal, and decisive act" as required for implied waiver. See *Claxton*, 2023 IL App (5th) 220200, ¶ 31. Plaintiffs' equitable estoppel claim fails for the same reason. *Dumenric v. Union Oil Co.*, 238 Ill. App. 3d 208, 213.

¶ 30                                III. CONCLUSION

¶ 31    The judgment of the circuit court of Cook County is affirmed.

¶ 32    Affirmed.