In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1793

RONALD SASLOW and ELLEN SASLOW,

*Plaintiffs-Appellants*,

*v.*

BANKERS STANDARD INSURANCE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-cv-4063 — **Steven C. Seeger**, *Judge*.

ARGUED FEBRUARY 25, 2026 — DECIDED MAY 28, 2026

Before KIRSCH, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Ronald Saslow and his passenger were injured in a car accident. Ronald and his wife, Ellen Saslow, had auto and umbrella insurance policies with Bankers Standard Insurance, and the Saslows filed claims with the company. Bankers Standard made payments for medical expenses and uninsured/underinsured motorist coverage, but the Saslows believe they should be able to stack their

coverages to recover more, and so filed this lawsuit in federal court under diversity jurisdiction. Finding that the Saslows were not entitled to additional payments, the district court granted summary judgment to Bankers Standard as to the Saslows' claims. We affirm.

I

The essential facts are undisputed. At the time of the accident, Ronald and Ellen Saslow had an auto insurance policy through Bankers Standard Insurance. The policy included coverage for medical expenses and damages caused by uninsured/underinsured motorists (UM/UIM). Of medical expenses coverage, the policy said that Bankers Standard would "pay up to *your* medical expenses *coverage limit*. That is the most we'll pay for each person injured in any one *vehicle accident*, no matter how many people or vehicles were involved." Similarly, the policy said that for UM/UIM coverage, Bankers Standard would "pay up to *your* coverage limit for that coverage. That is the most *we'll* pay for each *occurrence*, no matter how many people or vehicles were involved." The policy defined coverage limit as "the most we'll pay for an occurrence or loss," and noted that each type of coverage had its own limit, as shown on the declarations page. An occurrence meant "the accident that causes bodily injury, property damage or loss."

The declarations page of the auto policy (reproduced below) shows that the Saslows insured five different vehicles, and paid premiums specific to each vehicle. The first two of the Saslows' cars and their associated coverages, premiums, and limits were shown on one page of the agreement:

| COVERED VEHICLE DESCRIPTION | | | | | DEDUCTIBLE | |
|---|---|---|---|---|---|---|
| VEH | YEAR | MAKE | MODEL | VIN | COMP | COLL |
| 7 | 2016 | DODGE | CHALLENGER | 2C3CDZBT6GH283740 | 1000 | 1000 |
| 8 | 2018 | ACURA | RDX | 5J8TB4H77JL009294 | 1000 | 1000 |

| COVERAGE DESCRIPTION | COVERAGE LIMIT | PREMIUMS | |
|---|---|---|---|
| COVERAGE IS PROVIDED WHERE A COVERAGE LIMIT OR PREMIUM IS SHOWN FOR THE COVERAGE | | VEH 7 | VEH 8 |
| LIABILITY | 500,000 | 633.00 | 360.00 |
| UNINSURED/UNDERINSURED MOTORISTS | 500,000 | 122.00 | 106.00 |
| MEDICAL EXPENSES | 100,000 | 37.00 | 21.00 |
| COMPREHENSIVE - FULL GLASS | | 94.00 | 39.00 |
| COLLISION | | 640.00 | 252.00 |

And information relating to the other three cars was displayed on the following page:

| COVERED VEHICLE DESCRIPTION | | | | | DEDUCTIBLE | |
|---|---|---|---|---|---|---|
| VEH | YEAR | MAKE | MODEL | VIN | COMP | COLL |
| 9 | 2019 | ACURA | RDX | 5J8TC2H77KL026504 | 1000 | 1000 |
| 10 | 2019 | TESLA | MODEL X | 5YJXCBE42KF203280 | 1000 | 1000 |
| 11 | 2008 | TESLA | ROADSTER | 5YJRE11B381000258 | 1000 | 1000 |

| COVERAGE DESCRIPTION | COVERAGE LIMIT | PREMIUMS | | |
|---|---|---|---|---|
| COVERAGE IS PROVIDED WHERE A COVERAGE LIMIT OR PREMIUM IS SHOWN FOR THE COVERAGE | | VEH 9 | VEH 10 | VEH 11 |
| LIABILITY | 500,000 | 1621.00 | 633.00 | 247.00 |
| UNINSURED/UNDERINSURED MOTORISTS | 500,000 | 106.00 | 106.00 | 106.00 |
| MEDICAL EXPENSES | 100,000 | 95.00 | | |
| COMPREHENSIVE - FULL GLASS | | 193.00 | 135.00 | 43.00 |
| COLLISION | | 1243.00 | 1184.00 | 248.00 |

The auto policy said that Bankers Standard would pay all the money it owed within 60 days of receiving sworn proof of loss.

Ronald Saslow was also covered by an umbrella policy, a type of insurance which generally acts as excess coverage on top of a primary policy. *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 525 (7th Cir. 2005). Saslow's umbrella policy was a follow form agreement, which meant that the policy followed the definitions, terms, and conditions of the underlying insurance (here, the auto policy discussed above). The umbrella policy included UM/UIM coverage up to a limit of $1 million "per occurrence." The umbrella policy said the UM/UIM coverage limit was the most Bankers Standard would pay "regardless of the number of insured persons, claims made, persons injured, locations insured, or vehicles or watercraft involved in an occurrence."

After the accident, the Saslows received $879,832 from the driver of the other vehicle. The Saslows also filed claims with Bankers Standard. After reaching a decision on the claims, on several occasions Bankers Standard attempted and failed to issue payments, and the Saslows' attorney sent at least six written demands for payment over a four-month period. The company eventually paid $100,000 for medical expenses pursuant to the auto policy and $1 million in UM/UIM coverage under the umbrella policy.

The Saslows and the passenger injured in the accident (who settled her claims and is not involved in the appeal) began this lawsuit in federal court. Plaintiffs sought declaratory judgments that Bankers Standard owed them additional payments for medical expenses, UM/UIM coverage, and loss of consortium, and they sought fees and penalties based on Bankers Standard's delay in paying the claims. The parties filed cross-motions for summary judgment, and the district court granted Bankers Standard's motion against the Saslows. This appeal followed.

## II

De novo review applies to a ruling on cross-motions for summary judgment. *Polk v. Progressive N. Ins. Co.*, 171 F.4th 1001, 1004 (7th Cir. 2026). Because this appeal can be decided based only on Bankers Standard's motion for summary judgment, we construe the facts in the light most favorable to the Saslows and draw all reasonable inferences in their favor. *Id.* Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

This case requires us to interpret the auto and umbrella

insurance policies, applying state law. *Rahimzadeh v. Ace Am. Ins. Co.*, 142 F.4th 972, 976 (7th Cir. 2025). The parties agree that Illinois law governs their dispute, and Illinois applies general rules of contract law to insurance policies. *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). Illinois courts enforce unambiguous insurance policies as written. *Id.* (citation modified). Policies are ambiguous if they are "susceptible to more than one reasonable interpretation." *Kuhn v. Owners Ins. Co.*, 241 N.E.3d 397, 403 (Ill. 2024) (citation modified).

On appeal, the Saslows make several arguments as to why they are owed more under the policies. These fall into two categories: first, that they should be allowed to stack (meaning recover multiple times) the limits for medical expenses and UM/UIM coverages; and second, that the Saslows are entitled to additional recovery because Ronald was driving a rental car and there were multiple tortfeasors involved in the accident. The Saslows also argue that they are entitled to damages pursuant to an Illinois statute, 215 Ill. Comp. Stat. 5/155, which provides an extracontractual remedy if a court finds that an insurer's misconduct is vexatious and unreasonable. *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996). We consider each of these arguments below, beginning with stacking.

## A

The Saslows argue that because they paid separate premiums for each of their five cars, the related coverage limits appeared twice in the declaration page, and more than one person was insured under the policy, they should be able to stack the limits for medical expenses and UM/UIM coverage. And they reason that because stacking is permitted in the primary

auto policy, it should also be allowed under the umbrella policy.

The Saslows' argument fails because of the unambiguous anti-stacking language in both policies. The auto policy defines coverage limit as the most Bankers Standard will pay for an occurrence (meaning an accident). Of medical expenses and UM/UIM coverage, the policy says that Bankers Standard will pay up to the applicable coverage limit, and that each coverage limit is the most the company will pay "no matter how many people or vehicles were involved." The auto policy's other insurance clause underscores that the coverage limits cannot be stacked on a per vehicle basis: "Any recovery for damages for *bodily injury* sustained by an *insured person* may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance." And the umbrella policy says something similar: that there is a $1 million UM/UIM coverage limit per occurrence, which is the most Bankers Standard will pay "regardless of the number of insured persons, claims made, persons injured, locations insured, or vehicles or watercraft involved in an occurrence." Considered in the context of the rest of the policies, this language broadly prohibits stacking. See *Kuhn*, 241 N.E.3d at 406–07 (discussing similar anti-stacking language); *Polk*, 171 F.4th at 1004–05 (same).

The Saslows object that the policies do not specifically forbid stacking based on premiums paid, vehicles covered, or the number of times the limits and premiums appear in the policies. It's true that other cases where stacking was barred involved these kinds of factor-by-factor prohibitions. See, e.g., *Kuhn*, 241 N.E.3d at 406; *Hobbs v. Hartford Ins. Co.*, 823 N.E.2d 561, 564–65 (Ill. 2005). But those cases don't stand for the

proposition that an anti-stacking clause must call out every possible factor to generally bar stacking, and courts have found broad anti-stacking clauses without such specific language to be unambiguous and effective. See, e.g., *Hobbs*, 823 N.E.2d at 571 (rejecting a plaintiff's argument that because a broad anti-stacking clause did not "stipulate that coverage is limited by the facts of the case" stacking was permitted); *Polk*, 171 F.4th at 1004–05; *Willison v. Econ. Fire & Cas. Co.*, 690 N.E.2d 1073, 1076–77 (Ill. App. Ct. 1998). Similarly, that the auto policy's declaration page listed the coverage limits twice doesn't mean that it authorized stacking or made the policy ambiguous. In contrast to the cases the Saslows cite, the limits weren't repeated for each vehicle, and "[t]he only reasonable explanation for restating the liability limits on the second page is that the information for all [five] vehicles could not fit on one physical page." *Hess v. Est. of Klamm*, 161 N.E.3d 183, 190 (Ill. 2020); see also *Kuhn*, 241 N.E.3d at 408–09 (noting that "there is no bright-line rule that an insurance policy is ambiguous as to the limits of liability any time the limits are listed more than once on the declarations").

In short, putting together the definitions of coverage limit, medical expenses, UM/UIM coverage, and the other insurance clause, these policies prohibit stacking, including in the ways the Saslows want to stack here. The policies aren't ambiguous, and the Saslows could recover up to the applicable coverage limits, and no further.

B

We're also not persuaded by the Saslows' other arguments for recovery under the auto policy. The Saslows say that the accident involved a rental car and so the policy's other insurance provision applies, entitling them to an additional

payment for UM/UIM coverage. This argument fails because the other vehicle involved in the accident wasn't underinsured—it was covered by insurance with a limit equal to or higher than the auto policy's coverage limit.

Alternatively, the Saslows argue that because the other driver in the accident and his employer were both uninsured tortfeasors, they should be allowed to recover an additional amount from Bankers Standard. This undeveloped argument is waived. The Saslows failed to cite record evidence to support the proposition that both the other driver and his employer were at fault. *United States v. McGhee*, 98 F.4th 816, 824 (7th Cir. 2024) ("perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (citation modified); Fed. R. App. P. 28(a)(8)(A).

C

The Illinois Insurance Code—215 Ill. Comp. Stat. 5/155—says that if the trial court finds "an unreasonable delay in settling a claim" to be "vexatious and unreasonable," the court "may allow as part of the taxable costs in the action reasonable attorney fees [and] other costs." Fees are appropriate only when an insurer's behavior was willful and without reasonable cause, *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000), and we will disturb the district court's assessment as to whether Bankers Standard acted vexatiously and unreasonably only if the court abused its discretion, *Goldstein v. Fid. and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 754–55 (7th Cir. 1996).

While the auto policy required Bankers Standard to pay the Saslows for their claim within 60 days of receiving proof of loss, the insurance company tried to pay on time but

repeatedly had to issue new checks, resulting in a delay. The district court held that Bankers Standard made a mistake, and that nothing in the record showed unreasonable and vexatious behavior. We agree. Bankers Standard was two months late, but there's no evidence to suggest that the company intended to slow walk the checks. Instead, the record shows that the company repeatedly attempted to make good on its promises. The district court did not abuse its discretion in finding that the delay, standing on its own, was not vexatious and unreasonable. See *Citizens First*, 200 F.3d at 1110.

AFFIRMED